598 So.2d 502 (1992)
Glenn T. HAMPTON, Sr., Plaintiff-Appellant,
v.
HIBERNIA NATIONAL BANK, Defendant-Appellee.
No. 23405-CA.
Court of Appeal of Louisiana, Second Circuit.
April 8, 1992.
*503 Glenn T. Hampton, Sr., in pro. per.
Joseph P. Titone, Baton Rouge, for defendant-appellee.
Before HIGHTOWER, BROWN and STEWART, JJ.
STEWART, Judge.
Defendant, Hibernia National Bank, filed a peremptory exception of prescription asserting that, pursuant to LSA-C.C. art. 3492, prescription had run prior to the date that plaintiff, Glenn T. Hampton, Sr., filed suit. The trial court sustained the exception. Hampton appeals asserting that the liberative prescriptive period had not run and, in the alternative, that art. 3492 does not apply. We affirm in part, reverse in part and remand.

FACTS
Plaintiff, Glenn T. Hampton, Sr., filed suit in proper person against defendant, Hibernia National Bank (Hibernia), on August 8, 1990. The petition alleges the following facts: On July 17, 1986, Hampton borrowed $7,595.82 from Shreveport Bank and Trust, and agreed to repay the loan in 90 days or on October 15, 1986.[1] The loan proceeds in the amount of $7,000 were deposited in Hampton's Shreveport Bank and Trust checking account.
Hibernia later acquired ownership of Shreveport Bank and Trust including ownership of its notes receivable. On or about July 15, 1988, plaintiff opened a checking account with Hibernia's Summer Grove Branch, where the branch manager asked Hampton to visit another branch and pay the balance of $2,891.12 owed on the 1986 loan. On or about July 19-20, 1988, Hibernia deducted $2,891.12 from Hampton's checking account as a set-off against the balance due on his 1986 loan. Hampton's brother executed a note payable to Hibernia to renew all existing loans, including Hampton's 1986 loan on which Hampton had paid interest only as the note matured each 90 days. Prior to the deduction, Hibernia had agreed to accept $5,000 as full payment of Hampton's 1986 loan.
The petition further alleges that Hampton is entitled to a refund of the $2,891.12 which was deducted in error from his checking account. Hampton requested $3,000 as punitive damages, along with interest, attorney's fees, and costs of court.
Hibernia filed a peremptory exception of prescription asserting that the August 1990 filing was more than one year after Hampton's November 1988 actual and/or constructive knowledge of the alleged erroneous deduction. During the April 26, 1991 hearing on the exception, Hibernia presented testimony and other evidence which indicated that, as early as November 1988, Hampton had actual knowledge that Hibernia had deducted the funds from his checking account. Hampton did not appear at the hearing on the exception. The trial court sustained Hibernia's exception and dismissed Hampton's action. Hampton appeals.

DISCUSSION
We shall first address the nature of Hampton's action(s) as characterized in the pleadings, and then determine whether prescription has run under LSA-C.C. art. 3492.
The nature of a cause of action must be determined before it can be decided which prescriptive term is applicable. State Department of Highways v. City of Pineville, 403 So.2d 49, 54 (La.1981). The character of an action disclosed in the pleadings determines the prescriptive period applicable to that action. Starns v. Emmons, 538 So.2d 275 (La.1989).
It is well-settled that in certain circumstances the same acts or omissions may constitute breaches of both general duties and contractual duties, and may give rise to both actions in tort and actions *504 in contract. In such cases, the applicable prescriptive period is determined by the character which plaintiff gives his pleadings and the form of his action.
Stephens v. International Paper Co., 542 So.2d 35, 38 (La.App. 2d Cir.1989) (citation omitted). Courts may analyze the allegations in a petition and the damages sought to determine whether the action sounds in tort or in contract and therefore which prescriptive period applies. See Starns, supra. The classification of the source of that obligation is essential. See State Department of Highways, supra.
There is no doubt that Hampton alleges that Hibernia is obligated to him for the repayment of the money deducted as a set-off and for damages arising from the deduction. What is not clear is the source of this alleged obligation. Examination of the pleadings yields two possible sources: (1) the alleged tortious act of conversion and (2) the alleged compromise agreement (contract).
Allegations of Tort
Hampton alleges that Hibernia wrongfully deducted $2,891.12 from his checking account and that Hibernia repeatedly denied his requests for reimbursement.
The tort of conversion is committed when one wrongfully does any act of dominion over the property of another in denial of or inconsistent with the owner's rights. Security Home Mortgage Corp. v. Bogues, 519 So.2d 307 (La.App. 2d Cir. 1988); See also, Holland v. First National Bank of Crowley, 398 So.2d 186 (La.App. 3d Cir. 1981). Any wrongful exercise or assumption of authority over another's goods, depriving him of the possession, permanently or for an indefinite time, is a conversion. Quealy v. Paine, Webber Jackson & Curtis, Inc., 475 So.2d 756 (La. 1985). However, when the owner gives another permission to take possession of his property he must terminate that permission by requesting return of the property before continued possession by the non-owner will constitute a conversion. Security Home Mortgage Corp., supra; Miller v. Harvey, 408 So.2d 946 (La.App. 2d Cir. 1981).
Of course, in case of a wrongful dispossession, the owner of a movable may prefer to claim damages under the law of delictual obligations rather than restoration of his possession.
Delictual actions based on unlawful interference with the ownership or possession of movables are sometimes designated in Louisiana practice as actions for "conversion." Despite this denomination, these delictual actions are not identifiable with the common law tort of conversion which is an intentional wrong giving rise to strict liability for the recovery of the value of a chattel. One is justified in stating that the common law tort of conversion is not a part of the Louisiana law of delictual obligations.
Yiannopolous, Property, 37 La.L.Rev. 317, 330 (1977) (footnotes omitted). Delictual actions are subject to a liberative prescription of one year. This prescription commences to run from the day injury or damage is sustained. LSA-C.C. art. 3492.
Hampton alleges facts which indicate that Hibernia wrongfully exercised authority over his deposited funds and that this act was inconsistent with his rights. These allegations are delictual in nature and therefore subject to the one year prescriptive period under LSA-C.C. art. 3492.
Hampton makes two arguments asserting that his action had not prescribed under LSA-C.C. art. 3492. First, in his "Addendum Number One (1) to Appeal," Hampton asserts that, by deceit and misrepresentation, counsel for Hibernia led him to believe that Hibernia would reimburse the deducted funds after Hampton submitted to Hibernia an affidavit regarding Hibernia's promise to accept $5,000 as full payment of the 1986 note. Hampton claims that he did not realize he had just cause to sue for damages until after the affidavit, dated January 19, 1990, was submitted to Hibernia. He contends that he then filed suit on August 8, 1990, within one year of the time he learned he had just cause to sue.
Second, in brief, Hampton asserts that prescription had not yet begun to run because, despite written requests to Hibernia, *505 he never received a copy of a title opinion which was a necessary element constituting facts not known by Hampton and which thus afforded him a cause of action for recovery of the monies which were subject to the set-off.
As to his first argument, the affidavit regarding the alleged compromise agreement is attached to the petition, but neither the pleadings nor any other part of the record contains any reference to deceit or misrepresentation on the part of Hibernia or its counsel.
With regard to the second argument, the record contains no motion or order for discovery. Reference to the title opinion is made in a motion for continuance, filed February 7, 1991, in which Hampton describes the title opinion as "new evidence." In another motion for continuance, filed on the same date as the exception hearing, Hampton requests additional time to amend the pleadings, and indicates that the title opinion is an "essential element of evidence" in his claim. Yet, like the assertion of deceit and misrepresentation, there is no indication that Hibernia's failure to provide information about the title opinion was presented to the trial court.
Because there is no indication that Hampton presented either of these arguments to the trial court, we do not address these arguments on appeal.
The record reveals that, between November 1988 and February 1989, Hampton sent several letters to Hibernia in which he requested that it return the money taken from his checking account. Thus, during this time period, Hampton did have actual knowledge of the set-off. He filed suit against Hibernia on August 8, 1990, more than one year after he learned of the set-off.
On this record, we conclude that the LSA-C.C. art. 3492 liberative prescription has run on Hampton's conversion claim. Consequently, Hampton may not sue for, or recover, either the money deducted due to Hibernia's alleged tortious act of conversion or damages arising therefrom.
Allegations of Contract/Compromise
Hampton next argues that, rather than a delictual action, this is a contractual action governed by the three, five, or ten year liberative prescription articles. Hibernia maintains that Hampton's action is solely delictual and subject to the LSA-C.C. art. 3492 one-year prescriptive period, yet it cites no support for that assertion.
LSA-C.C. art. 3492 is inapplicable to any claim that Hampton may have arising from Hibernia's alleged agreement to accept the $5,000 as full payment of the 1986 loan. The language in the petition which relates to the alleged agreement is as follows:

4.
Plaintiff's brother, Jack W. Hampton, executed a note payable to Defendant in order to renew all existing loans, including the $7,595.87 note referred to above on which Plaintiff had paid interest only as the note matured each ninety (90) days. Plaintiff's brother informed him that the note had been paid in full when all loans were consolidated into a single note secured by the above Lot 118 Sunset Acres Sub. Defendant agreed in the offices of Attorneys Nelson, Hammons, and Johnson, Shreveport, Louisiana, to accept Five Thousand Dollars ($5,000.00) in full payment of said note and above and gave Jack W. Hampton a "PAID" note dated October 29, 1987.

5.
On July 19, 1988, before Plaintiff visited Mr. Troquille and without notifying Plaintiff, the Defendant deducted $2,891.12 from Plaintiff's checking account. After eight written inquiries to Defendant and officers employed by Defendant, Plaintiff received the original note for $7,595.87 stamped "PAID"Hibernia National Bank. Plaintiff asserts that this note or any balance due on same has been paid in full prior to the deduction from Plaintiff's checking account. Plaintiff further states that if a balance was due on the $7,595.87 note, it was secured by the real estate described herein and covered by title insurance which would provide for payment to Defendant of any balance due as result of *506 an error in the search of title necessary for a clear title. Defendant declined a loan in any amount to Plaintiff without collateral. Handwriting of the "October 28, 1987 date paid and the account number" 01-01 10928-2 are identical.

6.
As a result of Defendant's actions, Glenn T. Hampton, the Plaintiff herein, is entitled to a refund of the $2,891.12 deducted in error from Plaintiff's checking account number 76 13 1462 9. Deduction was made over two years after the original note was executed.

7.
Attached is Exhibit "B", copy of an affidavit submitted to the Defendant by the Plaintiff at the request of Mr. Frank Nicotera, Attorney for Defendant's "lending law division".
The affidavit referred to in paragraph 7 of the petition reads as follows:
We, Jack W. Hampton, Mabel Claire Gaston Driscoll and Glenn T. Hampton, the undersigned affidavits [sic], being first duly sworn, doth depose and say: Shreveport Bank and Trust Co. (later acquired by Hibernia National Bank) note number XX-XX-XXXXXX-X dated July 17, 1986, was signed by Glenn T. Hampton and co-signed by Mabel Claire Gaston Driscoll, said co-signed pledging as collateral for the total note in the principal sum of Seven Thousand Five Hundred Ninety Nine and 87/100 ($7,595.87) dollars, lot 118 Sunset Acres Subdivision Unit # 7, Shreveport, Caddo Parish, Louisiana. Mr. Butch Troquill, branch manager for Hibernia National Bank, made verbal promise in the presence of affidavit(s) to renew a mortgage loan on said real property and cancel above note in full for the total sum of Five Thousand Dollars but later unlawfully deducted from check account 76 13 1462 9 in the name of Glenn T. Hampton, the sume [sic] of Two Thousand Eight Hundred Ninety One dollars & 12/100 ($2,891.12). This was in violation of Mr. Troquill's verbal promise.
Hampton argues that Hibernia had an obligation, presumably arising from the alleged compromise agreement, to restore the deducted funds. Yet, the record is unclear about such details as when did the alleged compromise agreement occur, and who were the parties to the alleged agreement.
The failure to disclose a right or interest in the plaintiff to institute the suit may be noticed by the trial or appellate court of its own motion. LSA-C.C.P. art. 927. Nevertheless, when the failure to state a right of action may be removed by amendment of the petition, the judgment sustaining the exception shall order such amendment within the delay allowed by the court. If plaintiff fails to comply with the order to amend, the action shall be dismissed. LSA-C.C.P. art. 934.
The record does not contain sufficient information to determine the nature of the action, or the existence of a right of action, if any, which Hampton alleges from the facts attendant to Hibernia's agreement to accept the $5,000. The record contains no indication of whether a contract, quasi or otherwise, existed regarding the nature of Hampton's funds which were on deposit with Hibernia. Likewise, there is no indication whether the provisions of either the compromise agreement, or the previously discussed 1986 loan agreement, recognized or affected the relationship between Hibernia and Hampton as respective debtor and creditor with regard to the checking account in question. Consequently, although we conclude that the applicable prescription period is not governed by LSA-C.C. art. 3492, we do not determine the liberative prescriptive period applicable to any such claim.
Due to the lack of clarity in the pleadings and the paucity of the record, we cannot discern the existence of a right of action, or the precise nature of any claim, which Hampton may have arising from the alleged compromise agreement. We find that the petition fails to state that Hampton has a right of action in contract. This court may notice this deficiency on its own motion, therefore, it is of no moment that Hibernia has not raised this exception. Because there is a possibility that Hampton may be able to amend his petition to state a *507 right of action and to clarify the nature of whatever claim he may assert, if any, he should be given this opportunity. LSA-C.C.P. art. 934; see, Homer National Bank v. Tri-District Development Corp., 534 So.2d 154, 157 (La.App. 3d Cir.1988), writ denied, 536 So.2d 1236 (La. 1989).

CONCLUSION
With regard to Hampton's claim arising from the delictual allegations in the petition, we find that Hampton's action has prescribed under LSA-C.C. art. 3492. We affirm the trial court judgment with respect to Hampton's conversion claim. With regard to any claim Hampton may have arising from the allegations of compromise, we find that art. 3492 does not apply. We reverse the trial court judgment, with respect to Hampton's claim of error due to the alleged prior compromise agreement.
We find that Hampton has not stated a right of action in contract. Accordingly, this matter is remanded to the trial court to allow plaintiff, Glenn Hampton, 15 days from the date this opinion becomes final in which to amend his petition to state a right of action, in default of which, Hampton's action shall be dismissed. Costs of this appeal are assessed to defendant, Hibernia.
AFFIRMED IN PART, REVERSED IN PART AND REMANDED WITH INSTRUCTIONS.
NOTES
[1] Although the petition states October 15, 1985, the collateral agreement attached to the petition verifies the July 17, 1986 date. We therefore accept 1986 as the year this loan was executed and initially due for repayment.