672 So.2d 273 (1996)
Carol J. AYMOND, Jr., et ux.,
v.
STATE of Louisiana, DEPARTMENT OF REVENUE AND TAXATION.
No. 95 CA 1663.
Court of Appeal of Louisiana, First Circuit.
April 4, 1996.
*274 Carol J. Aymond, Jr., Mark Jeansonne, Bunkie, for Appellants, Carol J. Aymond, Jr. and Donna Aymond.
Barry W. Miller, Baton Rouge, for Appellee, State of Louisiana, Department of Revenue and Taxation.
Before LOTTINGER, C.J., and GONZALES and FITZSIMMONS, JJ.
GONZALES, Judge.
This case involves the mistaken payment of federal income taxes to the Louisiana Department of Revenue and Taxation (State). The State returned part of the payment to the taxpayers and applied the balance to the taxpayers' state tax liability. The trial court found that the State "wrongfully misuse[d]" the taxpayers' money by not returning all of it and awarded damages to the taxpayers. The State appeals the trial court's determination of liability and the taxpayers appeal the amount of damages awarded.

FACTS AND PROCEDURAL HISTORY
Carol J. Jr. and Donna Aymond live in Bunkie, Louisiana, where Mr. Aymond practices law. Patricia Baronne is employed by Mr. Aymond as a legal secretary and bookkeeper and is responsible for paying the Aymonds' federal and state taxes. As part of this responsibility, Ms. Baronne is authorized to sign checks on Mr. Aymond's business account at Cottonport Bank in Cottonport, Louisiana.
On July 28, 1992, Ms. Baronne prepared and signed a check for $50,000.00, payable to the Internal Revenue Service, for the Aymonds' estimated federal taxes for the second quarter of 1992. At the same time, Ms. Baronne mistakenly prepared a Louisiana Estimated Tax Return Voucher, indicating that the Aymonds owed estimated state taxes of $50,000.00 for the second quarter of 1992. *275 The voucher was signed by the Aymonds and mailed by Ms. Baronne to the State with the $50,000.00 check.
The voucher and check were duly processed by the State, the check was deposited in the State's account, and eventually paid by the drawee bank.
On November 19, 1992, Ms. Baronne discovered the mistaken payment and contacted the State, seeking return of the $50,000.00 check. The State informed Ms. Baronne that the check could not be returned because it had already been deposited and paid. She was further advised that, in accordance with State procedure, a return of money to the Aymonds would be processed as an overpayment of estimated state taxes under La.R.S. 47:115.
On December 11, 1992, the State sent the Aymonds a check for $34,110.00. The State retained the remaining $15,890.00 of the $50,000.00 payment, crediting the $15,890.00 to the Aymonds' estimated 1992 tax liability.[1] Having not received the check by December 22, 1992, Mr. Aymond wrote a letter informing the State that he planned to sue for its "fraudulent conversion" of his money. The State stopped payment on the first check, and issued a second check on December 23, 1992, which was received by the Aymonds, and deposited into Mr. Aymond's business account on January 4, 1993.
When the Aymonds filed their 1992 state tax returns, the return indicated a state income tax liability of $23,274.00 and taxes already paid as $22,969.00, leaving a balance of $305.00. The only payments and credits attributable to the Aymonds for 1992 were an estimated quarterly payment of $7,079.00 made by them for the first quarter of 1992 and the credit of $15,890.00 representing the amount retained by the State from the mistaken $50,000.00 payment. Thus, the Aymonds realized the benefit of the entire $50,000.00 mistakenly sent to the State by way of the $34,110.00 refund and the $15,890.00 tax credit for 1992. The Aymonds paid the $305.00 balance of their 1992 state tax liability under protest due to their controversy with the State.
On May 6, 1993, the Aymonds filed suit, claiming that the State had wrongfully converted their $50,000.00, causing them exposure to penalties by the Internal Revenue Service, as well as to mental anguish, inconvenience, expenses, and attorney fees. Following a trial held on December 15, 1994, the trial court rendered judgment against the State, awarding the Aymonds $500.00 in general damages.
The State appeals, contending that the trial court erred in awarding the Aymonds damages and in failing to find that the State acted reasonably. The State also contends that the Aymonds agreed to the $34,110.00 refund/$15,890.00 tax credit arrangement, thereby effecting a transaction and compromise of their claim against the State.
The Aymonds also appeal, contending that the trial court erred in awarding them only $500.00 in general damages.

CONVERSION
The Aymonds base their suit against the State on the legal theory of conversion. Conversion is an intentional tort and consists of an act in derogation of the plaintiff's possessory rights. Quealy v. Paine, Webber, Jackson & Curtis, Inc., 475 So.2d 756, 760 (La.1985); Whitley v. Manning, 623 So.2d 100, 102 (La.App. 1 Cir.), writ denied, 627 So.2d 656 (La.1993). The tort of conversion is committed when one wrongfully does any act of dominion over the property of another in denial of or inconsistent with the owner's rights. Hampton v. Hibernia National Bank, 598 So.2d 502, 504 (La.App. 2 Cir.1992). Any wrongful exercise or assumption of authority over another's goods, depriving him of the possession, permanently or for an indefinite time, is a conversion. Whitley v. Manning, 623 So.2d at *276 102. Although the defendant may have rightfully come into possession of another's goods, the subsequent refusal to surrender the goods to one who is entitled to them may constitute conversion. Louisiana State Bar Association v. Hinrichs, 486 So.2d 116, 121 (La.1986); W. Prosser & W. Keeton, Torts, § 15 at 98-99 (5th ed. 1984).
In a conversion suit, it is no defense that the defendant was not negligent or that the defendant acquired the plaintiff's property through the plaintiff's unilateral mistake, or that the defendant acted in complete innocence and perfect good faith. 18 Am Jur 2d, Conversion § 90 at 208 (1985). Further, the indebtedness of the plaintiff to the defendant, or the defendant's claim of such indebtedness, is not a defense. 18 Am Jur 2d, Conversion § 96 at 213. However, one who might otherwise be entitled to maintain an action for the conversion of his goods may afford the alleged wrongdoer a complete defense to the action by waiving the right to treat the act as wrongful, or by ratification thereof. 18 Am Jur 2d, Conversion § 102 at 217. If the owner expressly or impliedly assents to or ratifies the taking, use, or disposition of his property, he cannot recover for conversion of the property. 89 CJS, Trover & Conversion § 5 at 535 (1955). In other words, the right to sue in conversion may be defeated by any act or conduct which amounts to an estoppel. 89 CJS, Trover & Conversion § 88 at 583.
The State argues that, in a letter dated November 20, 1992, Mr. Aymond agreed to the State's refund of $34,110.00 and retention of $15,890.00 of the $50,000.00 mistaken payment. The letter, signed by Mr. Aymond, and addressed to Tracy Wilson, a State employee, reads as follows:
Dear Ms. Wilson:
This letter will confirm and acknowledge that said $50,000.00 check was incorrectly mailed to the State of Louisiana, Department of Revenue and Taxation, and was meant for the United States Treasury (Internal Revenue Service.)
We now understand that you refuse to return said check, and that you will retain $15,890.00 and will send us immediately a check for the balance of $34,110.00.
I had previously deposited $7,079.00 with the State of Louisiana, Department of Revenue and Taxation, plus the $15,890.00 you are now retaining, will mean that I have paid $22,969.00 in estimated Louisiana taxes to the State for 1992.
Please send my check as quickly as possible, and please forward to me a receipt or proof of deposit.
With best regards, I am
Sincerely,
/s Carol J. Aymond, Jr.
It is the State's position that the above letter evidences Mr. Aymond's "acquiescence and agreement" to the State's decision to return his $50,000.00 by way of a $34,110.00 refund and a $15,890.00 credit toward his 1992 state tax liability, and that such agreement by Mr. Aymond constitutes a compromise of his and his wife's claim against the State under La.C.C. art. 3071.
Although it is clear that Mr. Aymond's letter does not constitute a transaction or compromise of the Aymonds' claims within the meaning of La.C.C. art. 3071, we find that Mr. Aymond's letter, combined with other action taken by the Aymonds, estops them from suing the State in conversion. Mr. Aymond's request that the State issue the $34,110.00 check, the Aymond's subsequent deposit of the check into Mr. Aymond's business account, and their utilization of the $15,890.00 credit on their 1992 state tax return, is an implicit ratification of the State's disposition of the entire $50,000.00. Although the Aymonds may have suffered some inconvenience because of the State's refusal to issue them a check for $50,000.00, which we need not decide, they ultimately derived the entire benefit of the $50,000.00 by accepting the refund and utilizing the credit.
Therefore, we find that there has been no tortious conversion of the Aymonds' money in this case, and the trial court erred in finding otherwise. Because we reverse the trial court's judgment, we need not address the issue raised in the Aymonds' appeal.

*277 DECREE
For the foregoing reasons, the judgment of the trial court is REVERSED. Costs of this appeal are assessed to Carol J., Jr., and Donna Aymond.
NOTES
[1] The State's retention of $15,890.00 is explained as follows. The Aymonds' tax liability for 1991 was $22,969.00. Using this figure as an estimate of the total taxes to be owed by the Aymonds for 1992, and taking into account that a $7,079.00 payment had already been made for 1992 taxes, the State retained $15,890.00, the difference between $22,969.00, the amount of taxes paid in 1991, and $7,079.00, the amount already paid for estimated taxes in 1992. Mr. Aymond indicated his understanding of this calculation in a letter dated November 20, 1992.