860 So.2d 644 (2003)
F.G. BRUSCHWEILER (ANTIQUES) LTD.
v.
GBA GREAT BRITISH ANTIQUES, L.L.C., William Abbott, Jr. and Raymond Bordelon.
No. 03-CA-792.
Court of Appeal of Louisiana, Fifth Circuit.
November 25, 2003.
Rehearing Denied December 15, 2003.
*646 P.J. Stakelum, III, Chehardy, Sherman, Ellis, Breslin, Murray & Recile, LLP, Metairie, LA, Counsel for Appellant.
A. Bruce Netterville, Gretna, LA, Andre' P. Guichard, New Orleans, LA, Counsel for Appellants.
Robert A. Vosbein, Jr., Adams and Reese, LLP, New Orleans, LA, Counsel for Appellee.
Panel composed of Judges EDWARD A. DUFRESNE, JR., SOL GOTHARD and JAMES L. CANNELLA.
JAMES L. CANNELLA, Judge.
Defendants, GBA Great British Antiques, LLC (GBA), Raymond Bordelon (Bordelon) and William Abbott (Abbott), appeal the trial court judgment in favor of the Plaintiff, F.G. Bruschweiler (Antiques) LTD., (Bruschweiler), awarding the Plaintiff damages on open account against GBA and against Bordelon and Abbott personally. *647 For the reasons which follow, we affirm in part and reverse in part.
Bruschweiler, an antique dealer in England, brought suit to collect money ($9,500) from the sale of an antique table. GBA is a limited liability company doing business, primarily, in the sale of European antiques over "e-Bay," an internet auction site. GBA had three organizers and members, Abbott, an attorney, Bordelon, a CPA, and David Goldberg (Goldberg), an antique dealer. Each ran the part of the company in his field of expertise. Thus, Abbott supplied the legal counsel, Bordelon was the financial manager, and Goldberg ran the business, traveling to England to locate antiques for sale by GBA. GBA was capitalized with $3,000 from each member. GBA also arranged for a bank loan which was personally guaranteed by Abbott and Bordelon. GBA opened a bank account in its name and all proceeds from the sales were deposited into this account. Typically, Goldberg would select antiques from English dealers, photograph them and list them on e-Bay. When he got a buyer, he would collect the purchase price, exercise his option to buy the piece, pay the owner, and have the item shipped to the United States and delivered to the buyer. GBA listed the table in question on e-Bay, as was the customary practice. GBA believed that it had a buyer who agreed to pay $10,000. Bruschweiler was notified to ship the table. However, after the table had been first loaded into the shipping container, with other antique pieces behind it, but before it was shipped, Goldberg discovered that the buyer had backed out of the sale. He notified Bruschweiler. Upon finding out that the table had already been loaded into a shipping container with several other pieces and would be difficult to remove, the parties negotiated an agreement for Bruschweiler to ship the table without a buyer and for Goldberg to secure a buyer in the interim. When the shipping container arrived in the United States and Bruschweiler had not yet been paid, Bruschweiler refused to release the container. Since several other sold pieces were also in the container, GBA wanted the container released immediately. Several communications between Goldberg, Bordelon and Bruschweiler ensued. After promising Bruschweiler payment and faxing him a copy of wire transfer instructions, Bruschweiler released the container. The table was sold for $9,500 which was deposited in the GBA account. Bordelon issued two checks to himself in the total amount of $6,800. Bordelon testified that he was repaying himself for a loan that he made to the company to pay other creditors to secure release of the container with the table. Bruschweiler was never paid for the table.
Bruschweiler filed an open account suit against GBA to collect for the table as well as attorney fees. It also sued Bordelon and Abbot personally for conversion, seeking return of the proceeds from the sale of the table as well as general damages.
Following trial, the trial court rendered judgment in favor of Bruschweiler and against GBA, on open account, for $9,500 plus attorney fees of $15,000, legal interest from the date of judicial demand and court costs. The trial court also rendered judgment against Abbot and Bordelon personally for $9,500 plus general damages of $20,000, legal interest from the date of judicial demand and court costs. It is from this judgment that GBA, Bordelon and Abbott appeal. GBA and Bordelon have filed a separate appeal brief from Abbott.

GBA
GBA's primary argument on appeal is that the trial court erred in finding an "open account" and in assessing damages and attorney fees on that basis against it.
*648 Bruschweiler argues to the contrary that the open account was deemed admitted following a hearing where the trial court granted Bruschweiler's Motion to Have Requests for Admissions Deemed Admitted. Moreover, even if not admitted, the facts presented at trial support the finding of an open account relationship between Bruschweiler and GBA.
The following facts were admitted pursuant to the trial court's ruling granting Bruschweiler's motion to have the request for admissions admitted[1]:
1. Admit that GBA Great British Antiques, L.L.C. ("GBA") entered into a contract with F.G. Bruschweiler (Antiques) Ltd. ("Bruschweiler") for the sale of antiques by Bruschweiler on consignment through GBA to third parties.
2. Admit that GBA maintained an open account with Bruschweiler for the payment of proceeds received from the sale of antiques by Bruschweiler to third parties through GBA.
3. Admit that Bruschweiler sold a 20 foot antique oak table through GBA on or about October 1, 2001.
4. Admit that Bruschweiler shipped a 20 foot antique oak table to GBA that was to be sold through GBA to a third party.
5. Admit that GBA received the aforementioned 20 foot antique oak table from Bruschweiler.
6. Admit that the 20 foot antique oak table was sold through GBA to a third party.
7. Admit that the proceeds from the sale of the aforementioned 20 foot antique oak table were distributed or paid to GBA.
8. Admit that the proceeds from the sale of the 20 foot antique oak table were deposited or transferred into a banking or financial account maintained by or on behalf of GBA.
9. Admit that the proceeds from the sale of the aforementioned 20 foot antique oak table, after being deposited and/or transferred into the banking and/or financial accounts of GBA, were distributed to William Abbott, Jr. or Raymond J. Bordelon or both of them.
10. Admit that the proceeds received by GBA from the sale of the 20 foot antique oak table have never been distributed by GBA, William Abbott, Jr., or Raymond J. Bordelon to Bruschweiler.
Additionally, the evidence presented at trial indicated that despite the usual arrangement between the parties, where the item was not shipped prior to it being sold by GBA and payment made, the arrangements concerning the table were distinctly different. Because the original purchaser of the table cancelled, GBA agreed to have Bruschweiler ship the table prior to payment and further agreed to pay Bruschweiler for the table to secure release by Bruschweiler of the container. Based on the admissions and the facts presented, we find no error in the trial court finding that the table was sold on open account. As such, we further find no error in the trial court award, which is not disputed as to amount, of $9500 for the amount due for the table and $15,000 for attorney fees.
GBA also argues that the trial court erred in dismissing its reconventional *649 demand against Bruschweiler for breaching his agreement with GBA by failing to release the container due to nonpayment for the table.
Bruschweiler argues that the trial court was correct in dismissing GBA's reconventional demand, that its refusal to release the container was consistent with the agreement that it had with GBA, that GBA's allegations were vague, and that it introduced no evidence to support its demand. We agree.
The facts presented in this case show that Bruschweiler's actions were consistent with the agreement that it had with GBA. We find no evidence to support the reconventional demand and, therefore, find no error in the trial court action dismissing it.
Bordelon and Abbot
Bordelon and Abbot, although filing separate briefs, present some issues in common. Both argue that the trial court erred in holding them personally liable for the debt owed for the table. In rendering judgment, the trial court did not expressly state upon which theory of law Bordelon and Abbott were personally liable. In oral reasons for judgment the trial court refers to the lack of corporate minutes and the lack of any evidence of the loan by Bordelon to GBA. He also refers to a remark allegedly made by Abbott that Bruschweiler did not have to be paid because it would cost him more to collect the debt than it was worth. However, the trial court stopped short of stating whether its judgment was based on conversion or on "piercing the corporate veil." It appears that the trial court was relying primarily on what it perceived to be just. While we do not disagree with the trial court's feeling of what was just, we do not find that the personal liability of Bordelon and Abbot was proven based in the record before us.
Bordelon and Abbott argue that the trial court erred in finding them personally liable because the evidence shows that it was Goldberg alone, as an agent for GBA, who negotiated the sale of the table with Bruschweiler. There is no showing in the record that anyone dealt with Bruschweiler on a personal basis, rather they were representatives of GBA. Therefore, Bordelon and Abbott argue that Bruschweiler's remedy lies against GBA and not against them personally.
Bruschweiler argues to the contrary that Bordelon and Abbott converted the sale proceeds from the sale of the table that belonged to it. It bases this argument on the fact that there was evidence introduced showing that Bordelon wrote two corporate checks to himself in the amount of $6800 following the sale of the table and receipt of the sale proceeds by GBA. Thus, Bruschweiler argues that the trial court was correct in holding Bordelon and Abbott liable for conversion.
As pointed out above, certain facts were admitted based on the trial court's ruling granting Bruschweiler's motion for admission. Just as those facts governed the open account issue, so too do they control the conversion theory.
Conversion is an intentional tort and consists of an act in derogation of the plaintiff's possessory rights. Quealy v. Paine, Webber, Jackson & Curtis, Inc., 475 So.2d 756, 760 (La.1985); Aymond v. State, Dept. of Revenue and Taxation, 951663 (La.App. 1st Cir.4/4/96), 672 So.2d 273. The tort of conversion is committed when one wrongfully does any act of dominion over the property of another in denial of or inconsistent with the owner's rights. Aymond, supra; Hampton v. Hibernia National Bank, 598 So.2d 502, 504 (La.App. 2nd Cir.1992). Any wrongful exercise or assumption of authority over another's goods, depriving him of the possession, *650 permanently or for an indefinite time, is a conversion. Aymond, supra. Whitley v. Manning, 623 So.2d 100, at 102, writ denied, 627 So.2d 656 (La.1993). Although the defendant may have rightfully come into possession of another's goods, the subsequent refusal to surrender the goods to one who is entitled to them may constitute conversion. Louisiana State Bar Association v. Hinrichs, 486 So.2d 116, 121 (La.1986); Aymond, supra; W. Prosser & W. Keeton, Torts, § 15 at 98-99 (5th ed.1984).
The Louisiana Supreme Court recently reiterated the necessity of ownership of the thing, for establishing a conversion action. The Court noted, "that causes of action for conversion have been inferred from the Codal articles providing that the right of ownership, possession and enjoyment of movables are protected by actions for the recovery of the movables themselves, actions for restitution of their value and actions for damages. Consequently, the dispossessed owner of a corporeal movable may be accorded one of these actions to enforce his rights of ownership." Dual Drilling Co., v. Mills Equipment Investments, Inc., 98-0343, p. 4 (La.12/1/98), 721 So.2d 853, 856.
In this case, as noted above, it was admitted that there was an open account existing between GBA and Bruschweiler. Bruschweiler sent the table to GBA on open account. GBA was indebted to Bruschweiler in the amount of $9500 as agreed upon for the table. GBA thereafter made attempts and succeeded in selling the table. GBA received $9,500 for the table. The proceeds were deposited into the GBA account. Bruschweiler was not paid for the table. Bordelon wrote two checks to himself in the total amount of $6800 following the sale. We find that these facts and admissions do not establish ownership of the $9500 in Bruschweiler. To the contrary, we find that the money belonged to GBA. We do not find that an agency relationship between Bruschweiler and GBA was proven, but rather, as admitted, there was an open account relationship between a creditor or seller and a debtor. As such, no party can be found guilty of conversion of Bruschweiler's funds because Bruschweiler maintained no ownership interest in the funds. To the extent that Bordelon may have converted any funds, the evidence only establishes that he did so from GBA and not from Bruschweiler.[2] Moreover, there is no proof in the record that Abbott received any of the proceeds from the sale of the table from GBA or otherwise. Therefore, we find that personal liability of Bordelon and Abbott was not proven under a conversion theory.
Bordelon and Abbott further argue that Bruschweiler did not prove that the limited liability attendant to corporate ownership should be disregarded in this case such that personal liability against them was rightfully imposed.
Bruschweiler argues that Bordelon and Abbott showed no corporate minutes or other proper corporate activity to justify their limited liability corporate status, particularly as it pertains to the proceeds from the sale of the table which were paid in large part to Bordelon.
*651 It is well settled that because of the beneficial role of the corporate concept, the limited liability attendant to corporate ownership should be disregarded only in exceptional circumstances. Riggins v. Dixie Shoring Co., Inc., 590 So.2d 1164 (La.1991). Moreover, if the plaintiffs do not allege corporate fraud, they bear a heavy burden of proving that the shareholders disregarded the corporate entity to such an extent that it ceased to become distinguishable from themselves. Riggins, supra. As further pointed out by the Supreme Court in Riggins, there are several factors that courts consider when determining whether to apply the alter ego doctrine which include but are not limited to the following:
1) commingling of corporate and shareholder funds; 2) failure to follow statutory formalities for incorporating and transacting corporate affairs; 3) undercapitalization; 4) failure to provide separate bank accounts and bookkeeping records; and 5) failure to hold regular shareholder and director meetings.
In this case, Bruschweiler did not assert fraud in his pleadings, nor did the trial court find fraudulent activity based on the evidence. Rather, what the trial court found was that some of the corporate formalities were not strictly followed, such as formal Board of Director's meetings and the keeping of minutes. However, there was evidence that other corporate formalities were followed, like filing corporate papers, making corporate loans, having a corporate bank account and operating in the corporate name.
When a party seeks to pierce the corporate veil, the totality of the circumstances is determinative. It is the Plaintiff's burden to prove that the corporate limitation on liability should be disregarded in favor of shareholder personal liability. Riggins, supra. Based on the record in this case, we find that Bruschweiler did not meet its burden of proof on this point. Fraud was neither alleged nor proven. Neither Bordelon nor Abbott made personal promises to Bruschweiler. And, while it was proven that some formalities were not complied with, it was not established that it was to such an extent that the corporation ceased to be distinguishable from its shareholders. Therefore, we find no basis for disregarding the limited liability nature of GBA and thus any personal liability, imposed on Bordelon and Abbott on this basis, was error.
Finding no basis for the part of the trial court judgment imposing personal liability on Bordelon and Abbott for the value of the table and damages under either a conversion theory or corporate alter ego theory, we reverse that part of the judgment.
Finally, GBA, Bordelon and Abbott argue that the trial court erred in awarding a judgment in excess of the jurisdiction of First Parish Court. The parish court jurisdictional amount is set out in La. C.C.P, art. 4842(A) as follows:
Except as otherwise provided by law, the civil jurisdiction of a parish court is concurrent with the district court in cases where the amount in dispute, or the value of the property involved, does not exceed twenty thousand dollars.
La. C.C.P. art. 4841(B) further provides:
For the purposes of this Chapter, the amount in dispute is determined by the amount demanded, including damages pursuant to Civil Code Articles 2315.3 and 2315.4, or value asserted in good faith by the plaintiff, but does not include interest, court costs, attorney fees, or penalties, whether provided by agreement or by law.
Based on the foregoing and in view of our legal determinations above, the only remaining award in this case is against *652 GBA on open account in the amount of $9500 for the table and $15,000 for attorney fees. As provided in La. C.C.P. art. 4841(B), attorney fees are not included in determining the jurisdictional amount. Therefore, the award rendered herein is within the jurisdictional amount for parish court.
Accordingly, for the reasons set forth above, we affirm the trial court judgment insofar as it awarded Bruschweiler the sum of $9500 on open account and $15,000 attorney fees against GBA and dismissed GBA's reconventional demand. We reverse the trial court judgment insofar as it found Bordelon and Abbot personally liable. Costs of appeal are to be paid by each party.
AFFIRMED IN PART AND REVERSED IN PART.
NOTES
[1] We note that the trial court ruled on the motion for admission and granted it. The Defendants did not challenge the ruling at that time and it was not assigned as error on appeal.
[2] Argument has been made in brief concerning the checks Bordelon wrote to himself following the sale of the table. Bordelon contends that they were reimbursement of a loan that he made shortly prior to the disbursements to GBA. Bruschweiler points out that there are no corporate minutes or other documentation evidencing the loan. We find that resolution of whether there was a loan is not relevant to the outcome of this case because, for whatever reason Bordelon took the funds, he took them from GBA and not from Bruschweiler.