912 So.2d 715 (2005)
Brian K. KINCHEN and Lisa Kinchen
v.
LOUIE DABDOUB SELL CARS, INC.
No. 05-CA-218.
Court of Appeal of Louisiana, Fifth Circuit.
October 6, 2005.
Rehearing Denied November 7, 2005.
*716 Patrick D. Breeden, New Orleans, LA, for Plaintiff/Appellant.
Neal J. Favret, Rene' S. Paysse, Jr., Allison L. Nunley, New Orleans, LA, for Defendant/Appellee.
Panel composed of Judges JAMES L. CANNELLA, CLARENCE E. McMANUS, and JAMES C. GULOTTA, Pro Tempore.
JAMES L. CANNELLA, Judge.
Plaintiffs, Brian and Lisa Kinchen, appeal from a summary judgment in favor of the Defendant, Certain Interested Underwriters at Lloyd's London (Lloyd's). We affirm.
According to Plaintiffs' petition, they purchased a 1990 van from Louie Dabdoub Sell Cars, Inc. (Dabdoub) on June 22, 2001 for $6,027.31.[1] The next day, Plaintiffs experienced engine problems and returned the van to Dabdoub for repair. They contend that Dabdoub wanted to exchange the van for another vehicle, but they wanted the van fixed. Despite phone calls and visits to Dabdoub, the van was not returned. On June 29, 2001, Dabdoub notified Plaintiffs by letter that it considered the return of the vehicle a voluntarily surrender and cancelled the sale. In August of 2001, Plaintiffs' counsel sent a letter to Dabdoub demanding the van's return. Dabdoub did not respond or refund the Plaintiffs' money.[2]
On March 27, 2002, Plaintiffs filed suit against Dabdoub, who filed a notice of bankruptcy into the record on May 29, 2002. On December 10, 2002, the Plaintiffs amended the petition to add Lloyds and Reliance Insurance Company (Reliance.) Since Reliance was in liquidation, the action against it was stayed.
Lloyds filed a motion for summary judgment on July 12, 2004, alleging that the policy did not provide coverage for the circumstances alleged in the suit. A hearing was held on August 20, 2004. The trial judge rendered judgment in favor of Lloyd's on September 2, 2004, finding that the policy did not cover Dabdoub's actions.
On appeal, Plaintiffs assert that the trial judge erred in finding no coverage based on a provision in the policy excluding damage "expected or intended from the standpoint of the insured." Plaintiffs argue that Dabdoub's expectation or intention is a genuine issue of material fact, precluding summary judgment.
The policy is labeled "GARAGE LIABILITY  DEALERS" and provides liability coverage and "garagekeepers" coverage for any auto. The insurer is obligated to pay for bodily injury or property damage that the insured must legally pay caused by an "accident" and resulting from "garage operations." See: SECTION II, *717 A. "Accident" is not specifically defined in the policy.[3]
SECTION II, B(1) of the LIABILITY section, excludes "Expected or Intended Injuries," meaning, "Bodily injury or property damage expected or intended from the standpoint of the `insured.'" [Emphasis added.] It also excludes property damage to "Property in the "insured's" care, custody or control" (except for sidetrack agreements.) See: SECTION II, B(6)(d). "Loss of use" is not covered if caused by "A delay or failure by you ... to perform a contract of agreement in accordance with its terms." SECTION II, B(14).
The terms of the "GARAGEKEEPERS COVERAGE" are provided in SECTION III. Contractual obligations are excluded in SECTION III, B(1)(a). Furthermore, SECTION III, B(1)(b) excludes losses "due to theft or conversion caused in any way by you...."
Plaintiffs assert that Dabdoub sent them a letter informing them that it considered their actions to be a voluntary surrender. This indicates that it believed it was justified in keeping the vehicle. This factual allegation is included in the petition. Thus, Plaintiffs argue, from Dabdoub's standpoint, the damages were not expected or intended. Furthermore, since Plaintiffs contend that they sent the car back for repairs, the pleadings raise a genuine issue of material fact as to whether the damages were expected or intended from the standpoint of Dabdoub.
Lloyd's contends that it provides coverage under the policy only for an "accident" resulting from "garage operations." It argues that Dabdoub's failure to return the Plaintiffs' money was not an "accident," and the damages are excluded because they were "expected or intended from the standpoint" of Dabdoub. Accepting Plaintiffs' allegations in the petition as true, Dabdoub's letter to the Plaintiffs shows that it believed it had a valid reason for retaining possession of the van. If it did not, then the act constituted a conversion, which is an intentional act under Louisiana law. The trial judge agreed, adding that, "If Dabdoub had a valid basis for retaining possession of the vehicle, then the Plaintiffs' have no claim. On the other hand, if Dabdoub had no legal grounds to retain the vehicle, then its actions were clearly not an accident."
La.C.C.P. art. 966 B, provides in pertinent part that the summary judgment sought "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to material fact, and that mover is entitled to judgment as a matter of law."
A motion for summary judgment is reviewed by appellate courts de novo, using the same criteria applied by the trial courts to determine whether summary judgment is appropriate. Smith v. Our Lady of the Lake Hosp., 93-2512, p. 26 (La.7/5/94), 639 So.2d 730, 750; Garrison v. Tanenbaum, 02-1181, p. 4 (La.App. 5th Cir.4/8/03), 846 So.2d 40, 42. The summary judgment procedure is favored and shall be construed to secure the just, speedy, and inexpensive determination of most actions. La.C.C.P. art. 966(A)(2); Garrison, 02-1181 at p. 4, 846 So.2d at 42.
The burden of proof is on the movant. However, if the movant will not bear the burden of proof at trial on the *718 matter that is before the trial court on the motion for summary judgment, the movant's burden on the motion does not require him to negate all essential elements of the adverse party's claim, action, or defense, but rather to point out to the trial court that there is an absence of factual support for one or more elements essential to the adverse party's claim, action, or defense. Garrison, 02-1181 at p. 5, 846 So.2d at 43. Thereafter, if the adverse party fails to produce factual support sufficient to establish that he will be able to satisfy his evidentiary burden of proof at trial, there is no genuine issue of material fact. Id.; La. C.C.P. art. 966(C)(2). After the motion for summary judgment has been properly supported by the movant, the failure of the adverse party to produce evidence of a material factual dispute mandates the granting of the motion. Garrison, 02-1181 at p. 5, 846 So.2d at 43.
The only documents provided in support and opposition to the summary judgment were the pleadings in the record, including the petition, a copy of the insurance policy and a copy of a case apparently relied on by the trial judge from the Federal Seventh Circuit.
The policy in this case fails to fully define "accident." Therefore, we will apply the general contract interpretation principles. The words of a contract must be given their generally prevailing meaning. La.C.C. art. 2047. Black's Law Dictionary (8th ed.2004) defines "accident" as follows:
accident, n. 1. An unintended and unforeseen injurious occurrence; something that does not occur in the usual course of events or that could not be reasonably anticipated. 2. Equity practice. An unforeseen and injurious occurrence not attributable to mistake, negligence, neglect, or misconduct.
"The word `accident,' in accident policies, means an event which takes place without one's foresight or expectation. A result, though unexpected, is not an accident; the means or cause must be accidental...."
The purpose of the intentional act exclusion in an insurance policy is to prevent an insured from acting wrongfully while relying on an insurance policy to pay for the damages from the intentional or expected act. Williams v. City of Baton Rouge, 98-2024, p. 19 (La.4/13/99), 731 So.2d 240, 253. "The subjective intent of the insured, as well as his reasonable expectations as to the scope of his insurance coverage, will determine whether an act is intentional. An act is intended if the perpetrator desires the results of his action or he believes that the results are substantially certain to occur." Yount v. Maisano, 627 So.2d 148, 152 (La.1993), [citing Great American Ins. Co. v. Gaspard, 608 So.2d 981, 984 (La.1992) and Breland v. Schilling, 550 So.2d 609 (La.1989)]; Williams, 98-2024 at pp. 19-20, 731 So.2d at 253.
The tort of conversion is an intentional act done in derogation of the plaintiff's possessory rights. F.G. Bruschweiler (Antiques) Ltd. v. GBA Great British Antiques, L.L.C., 03-792, p. 7 (La.App. 5th Cir.11/25/03), 860 So.2d 644, 649. It is committed when one wrongfully does any act of dominion over the property of another in denial of or inconsistent with the owner's rights. Id. Any wrongful exercise or assumption of authority over another's goods, depriving him of the possession, permanently or for an indefinite time, is a conversion. F.G. Bruschweiler, 03-792 at p. 7, 860 So.2d at 649-650. Although a party may have rightfully come into possession of another's goods, the subsequent refusal to surrender the goods to one who is entitled to them may constitute conversion. Id.
*719 Based on the pleadings here, we find that the trial judge did not err in granting the summary judgment. As he stated, if Dabdoub had a valid basis for retaining possession of the vehicle, then the Plaintiffs' have no claim, and if Dabdoub's action was illegal, then there was no accident. Thus, the policy excludes coverage.
Accordingly, the judgment of the trial judge granting the motion for summary judgment is hereby affirmed. Costs of the appeal are to be paid by the Plaintiffs.
AFFIRMED.
NOTES
[1] Dabdoub provided financing. Finance charges were $1,549.56 at 24%, raising the total owed to $7,576.56. The Plaintiffs were to pay $102 weekly payments of $74 for 102 weeks, with a final payment of $28. Plaintiffs put $800 down on the purchase price and $199 for GAP insurance. The Plaintiffs also paid $200 to Dabdoub for "public officials."
[2] Apparently, Dabdoub sold the van to other purchasers on July 12, 2000, December 12, 2000 and February 7, 2002.
[3] SECTION VI, A states, "`Accident' includes continuous or repeated exposure to the same conditions resulting in "bodily injury" or "property damage." Property damage includes "loss of use." See: SECTION VI, K.