# STATE OF LOUISIANA
## COURT OF APPEAL, THIRD CIRCUIT

### 09-1093

**LOUISIANA HEALTH CARE GROUP, INC.**

**VERSUS**

**ALLEGIANCE HEALTH MANAGEMENT, INC., ET AL.**

**\*\*\*\*\*\*\*\*\*\***

APPEAL FROM THE
FIFTEENTH JUDICIAL DISTRICT COURT
PARISH OF LAFAYETTE, NO. C-2007-6693
HONORABLE HERMAN C. CLAUSE, DISTRICT JUDGE

**\*\*\*\*\*\*\*\*\*\***

**ULYSSES GENE THIBODEAUX**
**CHIEF JUDGE**

**\*\*\*\*\*\*\*\*\*\***

Court composed of Ulysses Gene Thibodeaux, Chief Judge, Oswald A. Decuir, and Elizabeth A. Pickett, Judges.

**AFFIRMED.**

**Gregory David Frost**
**Scott Nikolaus Hensgens**
**Eric B. Landry**
**Breazeale, Sachse & Wilson, L.L.P.**
**P. O. Box 3197**
**Baton Rouge, LA 70821-3197**
**Telephone: (225) 387-4000**
**COUNSEL FOR:**
    **Plaintiff/Appellee - Louisiana Health Care Group, L.L.C.**

**Richard E. Hiller**
**Shuey, Smith, LLC**
**401 Edwards Street - 13th Floor**
**Shreveport, LA 71101**
**Telephone: (318) 221-8671**
**COUNSEL FOR:**
    **Defendants/Appellants - Allegiance Health Management, Inc., Bienville Medical Center, and Rock Bordelon**

**THIBODEAUX, Chief Judge.**

Pursuant to a 2007 "Stock Sale Agreement," the plaintiff-appellee, Louisiana Health Care Group, L.L.C. (LHC), sold its one hundred percent (100%) interest in Bienville Medical Center, Inc. (Bienville) to Allegiance Health Management, Inc. (Allegiance). The Agreement provided for the retention by LHC of certain account-receivable assets. Upon the collection of these receivables, however, neither Bienville nor Allegiance remitted the funds to LHC.

LHC filed a Motion for Partial Summary Judgment (Motion) against Allegiance and Bienville seeking payment of the amounts owed. The trial court awarded LHC $575,696.68 for the accounts receivable and held Allegiance and Bienville liable *in solido* for the amount owed plus interest, attorney fees, and court costs. Allegiance and Bienville filed a suspensive appeal. For the reasons fully set forth below, we affirm the judgment of the trial court.

I.

**ISSUE**

We must decide whether the trial court erred in granting the Motion for Partial Summary Judgment filed by the plaintiff-appellee, Louisiana Health Care Group, L.L.C., finding the defendants-appellants, Allegiance Health Management, Inc., and Bienville Medical Center, Inc., liable *in solido* for $575,696.68.

II.

**FACTS**

In May of 2007, LHC agreed to sell all of its stock in Bienville Medical Center to Allegiance for $180,000.00. However, pursuant to the Stock Sale Agreement (Agreement) between LHC and Allegiance, LHC retained or excluded certain assets from the sale under section three, entitled "Excluded Company Assets."

Bienville was the subject of the sale and was referred to in the Agreement as "Company." At sections 3(B), 3(C) and 3(D), respectively, LHC retained "all amounts payable and accounts receivable for services provided [by Bienville] prior to the Effective Date" of July 1, 2007; "all Medicare and Medicaid cost report settlements for cost reporting periods ending on or before the Effective Date;" and, "all Uncompensated Care Distributions and Disproportionate Share Hospital payments received by the Company [Bienville] during calendar year 2007." The effective date of the Agreement, July 1, 2007, coincided with the fiscal year which ran from July 1 of each year through June 30 of the following year.

In November of 2008, having received none of the payments as provided for under the Agreement, LHC filed a Motion for Partial Summary Judgment alleging breach of contract, conversion, and unjust enrichment. As evidence, LHC attached a copy of Bienville's responses to LHC's Request for Admissions, wherein Bienville admitted to having received $431,604.49 in Medicare and/or Medicaid payments for services rendered prior to July 1, 2007. Likewise, the responses also contained an admission by Bienville that it had received $237,031.00 in Medicare and/or Medicaid cost report settlements for the "year ended December 31, 2006." LHC also attached remittance printouts and other evidence showing the receipt by Bienville of an additional $46,482.54 for services rendered between January 5 and June 30 of 2007.

Based upon the foregoing admissions and printouts, LHC asserted that Bienville had received a total of $715,118.03 for services rendered during the periods described in the Excluded Company Assets that Allegiance and LHC agreed upon as being owned by, retained by, and reserved to LHC under the terms of the Stock Sale Agreement. LHC further stipulated that it had received $139,421.35 for services rendered by Bienville *after* the effective date of the Agreement. Applying a set-off

2

in favor of Allegiance for that amount, LHC requested summary judgment in its favor in the amount of $575,686.68, the difference between the receivables owed to LHC and the set-off applied by LHC. The trial court found in favor of LHC, and in its judgment dated March 10, 2009, the trial court granted the amount requested. In a subsequent "Amended Judgment" dated March 30, 2009, the trial court designated the prior judgment as final pursuant to La.Civ.Code art. 1915(B)(1). In a second judgment dated March 30, 2009, the trial court, pursuant to the Stock Sale Agreement, awarded LHC $42,487.75 in judicial interest, attorney fees and costs. Allegiance and Bienville filed a Motion for a New Trial, which, after a hearing on the matter, was denied, pursuant to judgment dated May 14, 2009.

Allegiance and Bienville appealed the original "Judgment" of March 10, awarding LHC $575,686.68, and appealed the "Amended Judgment" of March 30, 2009, designating the original judgment as final. They did not appeal the additional March 30 judgment awarding interest, costs and attorney fees. Nor did they appeal the May 14 judgment denying the new trial. Therefore, while the defendants-appellants assigned as error the trial court's denial of a new trial and argued the issue in their appellate brief, the motion and order for this appeal clearly did not include the May 14, 2009 judgment denying the new trial. Accordingly, we will not address the issues or the evidence referenced in the Motion for New Trial but will limit this decision to the Motion for Summary Judgment granted in favor of LHC and against the appellants, Allegiance and Bienville, *in solido*.

## LAW AND DISCUSSION

**Standard of Review**

A motion for summary judgment will be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to material fact and that mover is entitled to judgment as a matter of law." *Sher v. Lafayette Ins. Co.*, 07-2441 p. 5 (La. 4/8/08), 988 So.2d 186, 192. Using the same criteria, courts review a grant or a denial of a motion for summary judgment *de novo*. *Id.*

**Breach of Contract**

Allegiance contends that the trial court erred in granting partial summary judgment to LHC and against Allegiance under a breach of contract theory because Allegiance never received the funds from Medicare or Medicaid and did not breach the contract by failing to deliver funds that it never received. Rather, Allegiance argues that the funds were received by Bienville and that Bienville, which was not a party to the Stock Sale Agreement, is under no obligation to transmit the receivables to LHC.

The Stock Sale Agreement provides that LHC is transferring its ownership of one hundred percent (100%) of Bienville's outstanding stock to Allegiance for consideration in the amount of $180,000.00. However, the Agreement also provides, under section three (3), "Excluded Company Assets," that "the parties agree" that the seller, LHC, "shall retain all rights, title and interest" in and to the following:

> A. Any and all bank accounts, and prior to the Effective Date Company shall transfer and assign to Seller all its rights, title and interest in and to Company's bank

account which receives remittances from third party payors, including Medicare . . . .

B. Any and all amounts payable and accounts receivable for services provided prior to the Effective Date . . . .

C. Any and all Medicare and Medicaid cost report settlements for cost reporting periods ending on or before the Effective Date, and

D. Any and all rights to any [and] all Uncompensated Care Distributions and Disproportionate Share Hospital payments received by [Bienville] during calendar year 2007. . . .

Therefore, while Bienville was not a party to the Agreement, it was the *subject* of the Agreement. Allegiance *agreed* that funds generated by its newly acquired company, Bienville, prior to July 1, 2007, and not yet received (hence, outstanding accounts receivable), would not be part of the sale but would be retained by, and remitted to, LHC. The argument that Allegiance had no contractual obligation under the Agreement to obtain the receivables from Bienville, which it now owned, and to deliver those receivables to LHC, or to cause Bienville to remit the receivables directly to LHC, has no merit. "Future things [such as amounts payable and accounts receivable] may be the object of a contract." La.Civ.Code art. 1976. Moreover, pursuant to La.Civ.Code art. 1977, and the Agreement, Allegiance is obligated for the performance of Bienville. More specifically, our Civil Code provides:

Art. 1977. Obligation or performance by a third person

The object of a contract may be that a third person will incur an obligation or render a performance.

The party who promised that obligation or performance is liable for damages if the third person does not bind himself or does not perform.

5

Accordingly, under articles 1976 and 1977, Allegiance agreed in writing that its newly acquired company, Bienville, would reserve for LHC the future collections, or future payments on accounts receivable, for certain Medicare and/or Medicaid payments and for designated services that Bienville provided prior to July 1, 2007. Through the Agreement, Allegiance promised to LHC that Bienville would render performance by remitting the receivables that it collected, and because Bienville has not performed, Allegiance is liable for the payments. Because Allegiance has not remitted the payments for which it is liable, it has breached its contract with LHC. The trial court did not err in finding breach of contract.

**Conversion**

Allegiance argues, in a somewhat contorted effort to create an issue of fact, that it is unknown what the Agreement contemplated, but that Allegiance could not have converted funds that it never received, and Bienville could not have converted funds if it were not a party to the Agreement. Ostensibly quoting *Dual Drilling Co. v. Mills Equipment Investments, Inc.*, 98-0343 (La. 12/1/98), 721 So.2d 853,[1] Allegiance defines conversion as "a distinct act of dominion wrongfully exerted over another's property in denial of or inconsistent with the owner's rights therein." The quote by Allegiance is not found in *Dual Drilling*. Nonetheless, it is a fair, but incomplete definition. Allegiance limits its definition of conversion and questions whether the Agreement contemplates the receipt of funds by Allegiance "in exactly the manner in which the funds at issue were received," thereby implying no wrongful

---

[1] Conversion "is grounded on the unlawful interference with the ownership or possession of a movable . . . . A conversion is committed when any of the following occurs: 1) possession is acquired in an unauthorized manner; 2) the chattel is removed from one place to another with the intent to exercise control over it; 3) possession of the chattel is transferred without authority; 4) possession is withheld from the owner or possessor; 5) the chattel is altered or destroyed; 6) the chattel is used improperly; or 7) ownership is asserted over the chattel." *Dual Drilling Co.,* 721 So.2d at 857.

dominion. However, the definition of conversion is broader than argued. That is to say,

> The tort of conversion is an intentional act done in derogation of the plaintiff's possessory rights. It is committed when one wrongfully does any act of dominion over the property of another in denial of or inconsistent with the owner's rights. Any wrongful exercise or assumption of authority over another's goods, depriving him of the possession, permanently or for an indefinite time, is a conversion. *Although a party may have rightfully come into possession of another's goods, the subsequent refusal to surrender the goods to one who is entitled to them may constitute conversion.*

*Kinchen v. Louie Dabdoub Sell Cars, Inc.*, 05-218 (La.App. 5 Cir. 10/6/05), 912 So.2d 715, 718 (emphasis added) (citations omitted), *writ denied,* 05-2356 (La. 3/17/06), 925 So.2d 544.

In its discovery responses to LHC's Request for Admissions, Bienville admitted to having received $431,604.49 in Medicare and/or Medicaid payments for services rendered prior to July 1, 2007. Likewise, the responses also contained an admission by Bienville that it had received $237,031.00 in Medicare and/or Medicaid cost report settlements for the "year ended December 31, 2006." Due to these admissions by Bienville, and the above discussed liability of Allegiance for the non-performance of Bienville, Allegiance's self-serving and self-created dispute over the fact of the receipt of funds cannot materially affect the propriety of summary judgment in this case. Allegiance argues that neither it nor Bienville acquired possession of funds in any unauthorized manner such that the tort of conversion has been proved.

However, while the initial, and admitted, receipt of the funds by Bienville may not have been wrongful, Bienville's and Allegiance's subsequent refusals to surrender the funds to LHC, pursuant to the contract, constitute a

conversion of the funds for use by the defendants and against the rights and interests of LHC. Whether they used the funds for operations, payment of bills, or for investment purposes, their use of the funds prevented LHC from using the funds for their own purposes. The trial court did not err in finding that defendants converted the LHC funds to their own use.

In summary, Allegiance argues that summary judgment is inappropriate because there are disputed issues of material fact. Allegiance contends that the Agreement is unclear and ambiguous as to when payments for services rendered by Bienville were to be applied and to whom. This argument has no merit. As shown above, the Agreement is very clear. The receivables for services rendered by Bienville prior to July 1, 2007, the effective date of the sale and Agreement, were excluded from the sale and were to be paid to LHC when collected. Under La.Civ.Code arts. 1976 and 1977, the future amounts collected on Bienville's accounts payable and receivable for services before the effective date were designated in the Agreement as belonging to LHC, and Allegiance contracted for and promised performance by Bienville for the delivery of those payments.

For these same reasons, contrary to Allegiance's assertions, it is immaterial whether Allegiance actually received the funds itself, and it is immaterial that Bienville was not a party-signatory on the Agreement. To the extent that Allegiance disputes the amount of credit and setoff that Allegiance and/or Bienville are owed, the amount of additional credits was not raised until the motion for a new trial, which is not on appeal. Moreover, setoff is an affirmative defense. Because LHC clearly showed the amounts owed to LHC, through the introduction of the Agreement and the admissions by Bienville, the burden shifted to Allegiance and Bienville to show that it could prove any affirmative defense that would defeat

8

summary judgment. *John C. Bose Consulting Engineer, LLC v. John T. Campo & Associates, Inc.,* 07-1001 (La.App. 4 Cir. 2/20/08), 978 So.2d 1033, *writ denied,* 08-0643 (La. 5/09/08), 980 So.2d 696. Allegiance and Bienville did not carry that burden. Accordingly, we find no issue of material fact to prevent summary judgment in this matter.

Because we have found Allegiance liable under breach of contract and have found Allegiance and Bienville liable under tortious conversion of LHC assets, and because we have found no issue of material fact to preclude summary judgment, we need not discuss the other two theories of liability, equitable estoppel and unjust enrichment.

IV.

## CONCLUSION

Based upon the foregoing, we affirm the trial court's judgment granting summary judgment in favor of LHC. All costs of this appeal are assessed against Allegiance Health Management, Inc. and Bienville Medical Center, Inc.

**AFFIRMED.**