NOT DESIGNATED FOR PUBLICATION

STATE OF LOUISIANA
COURT OF APPEAL, THIRD CIRCUIT

CA 13-1387

DAVID R. RABALAIS

VERSUS

JACK GARDNER'S TEN MINUTE OIL CHANGE, INC.

**********

APPEAL FROM THE
LAFAYETTE CITY COURT
PARISH OF LAFAYETTE, NO. 2013CV0978
HONORABLE FRANCES MORAN BOUILLION, CITY COURT JUDGE

**********

BILLY HOWARD EZELL
JUDGE

**********

Court composed of John D. Saunders, Jimmie C. Peters, and Billy Howard Ezell, Judges.

AFFIRMED.

Steven Thomas Richard
911 Veterans Memorial, Suite 204
Metairie, LA 70005
(504) 352-0853
COUNSEL FOR DEFENDANT/APPELLEE:
    Gardner's One Stop, Inc.

**David R. Rabalais**
**The Dill Firm**
**P. O. Box 3324**
**Lafayette, LA 70505**
**(337) 261-1408**
**COUNSEL FOR PLAINTIFF/APPELLANT:**
    **David R. Rabalais**

**EZELL, Judge.**

David Rabalais appeals a trial court judgment which dismissed his claim against Gardner's One Stop, Inc.[1], for the theft of $3,000 by one of its employees. The trial court found that David failed to establish that any employee of Gardner's committed a theft. For the following reasons, we affirm the judgment of the trial court.

## FACTS

According to David, an attorney practicing in Lafayette, he had just settled a case. He withdrew $3,500 in cash from his bank on Monday, March 25, 2013. He put $500 in his money clip and left the other $3,000 in the bank envelope. The $3,000 consisted of thirty one-hundred dollar bills. He and his paralegal were going to take the $3,000 to the casino and celebrate the settlement with their spouses later in the week.

David put the envelope in his jacket and went to the mall to meet his wife at Macy's. He and his wife then left in separate cars to meet at Copeland's for dinner. Not wanting to bring the envelope into Copeland's, David testified that he placed the envelope under the passenger's rear floor mat of the driver's side. After dinner, he returned to his car and drove home and parked the car in his garage.

The next day, David went to work. He asked his runner, Delaney Meaux, to run a couple of errands. He needed to have some knives sharpened, and he wanted his car washed. Delaney first took the knives to Piper's Haven and left them there to be sharpened. She then went to Gardner's to have the car washed.

---

[1]     At the start of the trial, the parties stipulated that the proper name of the defendant is Gardner's One Stop, Inc.

Once Delaney arrived at the carwash, she took David's gym bag, shoes, and iPad from the back seat and placed them in the trunk. She did not look under the floor mats. Once the car was washed, she returned to the law office.

About twenty to thirty minutes after Delaney left, David remembered the envelope containing the cash under the floor mat. He kept trying to call Delaney, but she did not hear her phone because it was on silent in her purse. When she got back from the carwash, David checked under the floor mat and the envelope containing the cash was gone. David and Delaney immediately returned to the carwash.

Once they got to the carwash, they ran into Jennifer Primavera. She told them that no one had turned in any money and suggested they search the garbage cans. A search of the garbage cans did not turn up the envelope of cash. David then decided to go search his home, even though he did not remember taking the envelope out of the car. He did not find the cash. David called Jennifer to let her know that he did not find the cash. She then transferred him to Carl Tauzin, the operational manager at Gardner's. Carl told David that they had surveillance cameras and that he would review it.

Anxious about the cash, David decided to return to the carwash. David was eventually directed to Michael Gardner, one of the owners. Michael told David that he reviewed the security tape and did not see anything suspicious on it. David told Michael that he would like to review the tape himself. David testified that Michael agreed at first but then changed his mind. At this point, David told him he was going to call the police.

Once David called the police, Officer Norman Maldonado was dispatched to the carwash. Officer Maldonado testified that Michael was very upset when he

arrived and would not let him look at the video. Michael explained that he was busy when the officer arrived because he was short a cashier. A few days later, on Friday, Officer Maldonado returned to the carwash and was able to view the video.

Officer Maldonado's review of the video shows a woman vacuuming the driver side rear. She stops vacuuming, takes a few seconds, looks up, looks to the rear of the vehicle, looks back down. He then sees movement again. After a few seconds, she removes herself from the area. He agreed it was not possible to see if she picked anything up. Officer Maldonado determined that there was not enough evidence on the video to arrest the woman.

Officer Maldonado also interviewed the woman about the incident the day David discovered the envelope of cash was missing. She even agreed to be searched at that time. However, the officer testified that he could visually look at her and tell it was not necessary. He also interviewed Delaney, the runner, and was not suspicious of her.

On Wednesday, March 27, David prepared a letter informing Gardner's that he had drafted a lawsuit to be filed within the week. He also requested that it not delete, destroy, or in any way impact the surveillance video taken at the time of the incident. This letter was faxed to Gardner's that day.

Michael testified that the only fax machine is located in the oil change business, which is located in a different building from the carwash. He did not see the fax, which was on his desk, until Saturday. By that time, the video had been overwritten. Michael testified that you cannot retrieve a video after four days. At that time, Michael's schedule had him working Tuesday, Wednesday, and every other Saturday.

3

David filed suit on March 27, 2013. A hearing was held on September 12, 2013. The trial court determined that there had been no spoliation of evidence and that David had failed to meet his burden of proof. From this ruling, David filed the present appeal.

**CONVERSION**

David contends that he carried his burden of establishing more probably than not that the money was taken by an employee of Gardner's. He argues that several of the trial court's facts cited in support of the decision were directly contradicted by credible, affirmative testimony.

A conversion "is an intentional act done in derogation of the plaintiff's possessory rights." *La. Health Care Grp., Inc. v. Allegiance Health Mgt., Inc.*, 09-1093, p. 7 (La.App. 3 Cir. 3/10/10), 32 So.3d 1138, 1043 (quoting *Kinchen v. Louie Dabdoub Sell Cars, Inc.*, 05-218 (La.App. 5 Cir. 10/6/05), 912 So.2d 715, 718. "Any wrongful exercise or assumption of authority over another's goods, depriving him of the possession, permanently or for an indefinite period of time, is conversion." *Glod v. Baker*, 08-355, p. 10 (La.App. 3 Cir. 11/19/08), 998 So.2d 308, 317, *writ denied*, 08-2937 (La. 2/20/09), 1 So.3d 497.

> A conversion is committed when any of the following occurs: 1) possession is acquired in an unauthorized manner; 2) the chattel is removed from one place to another with the intent to exercise control over it; 3) possession of the chattel is transferred without authority; 4) possession is withheld from the owner or possessor; 5) the chattel is altered or destroyed; 6) the chattel is used improperly; or 7) ownership is asserted over the chattel.

*Dual Drilling Co. v. Mills Equip. Invs., Inc.*, 98-343, 98-356, p. 4 (La. 12/1/98), 721 So.2d 853, 857 (citing Frank L. Maraist & Thomas C. Galligan, Louisiana Tort Law § 1-2, at 3 (1996 & Supp.1998)).

4

The plaintiff must prove by a preponderance of the evidence that a conversion occurred. *Crawford v. Reagan*, 34,417 (La.App. 2 Cir. 2/28/01), 779 So.2d 1116. "Proof by a preponderance of evidence means that the fact or cause sought to be proved is more probable than not." *James v. McHenry*, 36,098, p. 2 (La.App. 2 Cir. 9/18/02), 828 So.2d 94, 95. A trial court's factual determination that a conversion has or has not occurred is subject to the manifest error standard of review. *Glod*, 998 So.2d 308. The reviewing court must determine whether the fact finder's conclusion was reasonable. *Id.*

David specifically claims that he eliminated other scenarios with credible evidence. He claims that he established that he placed the money in his car, his car was locked or in the garage at all times, his car and house were not vandalized, that neither he nor Delaney removed the money, and no one was under the rear floor mat until it was vacuumed by a carwash employee.

The evidence established that the carwash employee seen on camera who is vacuuming that portion of the car was employed as part of a work release program. She agreed to be searched by Officer Maldonado, but he did not see that it was necessary. Also, Armen Alexandrian, the transitional work program manager with the Lafayette Sheriff's Office, testified that all work release employees are "pat searched" when they return. Any cash found over $30 is considered contraband. This particular employee was not caught with any excess cash.

Also, both Officer Maldonado and Michael saw the video and did not see any indication that a theft had occurred. Michael testified that he looked at it two to three times and never saw anything establishing a removal of the envelope from the car. Carl also saw the tape, and there is no testimony from him that he saw anything suspicious.

5

We cannot say that the trial court's determination that David failed to prove by a preponderance of the evidence that someone at Gardner's took the envelope containing the cash was manifestly erroneous or clearly wrong. Even David admitted that Delaney could not be ruled out as someone who possibly took the envelope.

## SPOLIATION OF EVIDENCE

David argues that the trial court erred in failing to apply the spoliation presumption. He argues that Michael had his fax in hand requesting that he preserve the video and he made no effort to preserve the video.

"Where a litigant fails to produce evidence available to him and he does not provide a reasonable explanation, the presumption is that evidence would have been unfavorable." *Lawrence v. City of Shreveport*, 41,825, p. 11 (La.App. 2 Cir. 1/31/07), 948 So.2d 1179, 1187, *writ denied*, 07-441 (La. 4/20/07), 954 So.2d 166. "That presumption does not apply where the litigant explains the failure to produce the evidence." *Id*.

Prior to trial, the parties stipulated that if Stephanie Tauzin testified at trial, she would state that she could not specifically remember the fax from David. If she did receive the fax, she would not have called Michael but would have placed the fax in his file box. She is the person who most often checks the fax machine, but someone else could have checked it also.

Stephen Gardner, another owner, testified that at that time Michael worked Tuesday, Wednesday, and every other Saturday. Officer Maldonado testified that Michael was not there on Friday when he viewed the video. Michael testified that he did not see the fax until Saturday. By this time, the video from the day of the incident had been overwritten.

Jeffrey Koenig, a product evaluation manager with Revo America, the company that manufactured the surveillance equipment, testified that the data would only be available if the hard drive is large enough to accommodate the material because it keeps recording. How many days were available depended on the amount of motion. It ranged from 12.6 days to 3.2 days. Jeffrey also explained that once the data is overwritten, there is no way to retrieve it.

We agree with the trial court that a reasonable explanation exists as to why the video was not available. Furthermore, the video was not only viewed by several people at the carwash but also by Officer Maldonado, who was an unbiased witness. No one saw anything establishing a theft of the envelope of cash.

For these reasons, the judgment of the trial court is affirmed. Costs of this appeal are assessed to David Rabalais.

**AFFIRMED.**

This opinion is NOT DESIGNATED FOR PUBLICATION. Uniform Rules—Courts of Appeal. Rule 2–16.3.