525 So.2d 19 (1988)
J.R. HAGBER6, d/b/a Jim Jackson Contractor, Plaintiff-Appellant,
v.
Diann Dale MANUEL and Ledoux Dirt Service, Inc., Defendants-Appellees.
No. 87-20.
Court of Appeal of Louisiana, Third Circuit.
February 3, 1988.
*20 Gold, Simon, etc. (Robert G. Nida), Alexandria, for plaintiff-appellant.
Phelps Dunbar (H. Alton Johnson, III, Jennifer Zimmerman), Baton Rouge, for defendant-appellee.
Before GUIDRY, YELVERTON and SWIFT[*], JJ.
GUIDRY, Judge.
This action for tortious conversion was filed by J.R. Hagberg d/b/a Jim Jackson Contractor against Diann Dale Manuel and Ledoux Dirt Service, Inc. seeking damages for the losses he sustained when defendant Manuel, without complying with the requisite laws, sold plaintiff's heater-scarifier machine to defendant, Ledoux, who thereafter dismantled the machine and sold substantial parts of it for scrap. The trial court rendered judgment in favor of Hagberg and against Manuel and Ledoux, in solido, for $25,000.00, plus interest, representing the value placed by the court on the Hagberg machine at the time of conversion. Further, the court rendered judgment *21 in favor of Hagberg and against Manuel, individually, for $6,316.00 for the costs to ready a substitute machine and $2,000.00 for mental anguish and inconvenience. Defendants were cast with all costs.
Plaintiff, Hagberg, appealed raising the following issues:
1. Insufficiency of the award.
2. The trial court's failure to cast Ledoux Dirt Service, Inc. in solido with Diann Dale Manuel for all damages awarded.
Defendants answered the appeal urging the following errors:
1. The trial court erred when it concluded that the Hagberg machine had been converted and that Diann Dale Manuel and Ledoux Dirt Service, Inc. were liable for the value of the Hagberg machine, in that:
a. Any damage suffered by Hagberg was not caused by the fault of the defendants.
b. Hagberg failed to prove conversion because he had abandoned the machine.
2. The trial court erred when it awarded $25,000.00 to Hagberg for the value of the machine.
3. The trial court erred in awarding Hagberg general damages.
The learned trial judge, in his written reasons for judgment, gave an excellent statement of the facts which is fully supported by the record. We quote approvingly:
"The facts concerning the alleged conversion are not in dispute. Hagberg, who was previously employed by Jim Jackson for many years, purchased the machine and other assets belonging to Jackson through the Bankruptcy Court in Arkansas in December of 1980 and went into business for himself. His first two jobs in Louisiana were in Jefferson Davis Parish, Louisiana, one in the Fall of 1980 in Lake Arthur, Louisiana, and the other in the Summer of 1981 in Jennings, Louisiana. After completion of the Jennings job the machine was parked temporarily on railroad property and then permission was obtained to park the machine on Manuel's property. Sometime later, not having heard from Hagberg, Manuel's mother contacted Hagberg by phone. Hagberg agreed to pay $50.00 per month rental retroactive to October, 1981.
No further contact was made by Hagberg, nor was any rent paid. At this point Manuel employed an attorney in Jennings. This attorney, by letter dated January 10, 1984 made demand on Hagberg for payment of the delinquent rental advising in default thereof the machine would be seized and sold at Sheriff's Sale to pay the debt. Still receiving no response suit was filed by Manuel on May 18, 1984 in proceedings No. C-410-84 on the docket of this court seeking a judgment in the amount of $1,400.00 for past due rent, sequestration of the machine and recognition and enforcement of her lessor's privilege on the machine. Service was obtained on Hagberg by mail under the Long Arm Statute and judgment was rendered against Hagberg on September 11, 1984. This judgment was annulled by the court on June 6, 1986 for failure to technically comply with the Long Arm Statute in obtaining the default judgment.
After the initial judgment was obtained Manuel, without complying with the formal requirements of law for execution on her judgment, on May 29, 1985, sold the Hagberg machine by private sale to Ledoux for $1,000.00. Prior to the sale Manuel's attorney sent letters to potential purchasers of asphalt equipment. Ledoux purchased the machine in response to this inquiry, although Warren Gary, an officer of Ledoux was familiar with the machine as he worked with Ledoux as general contractor on the Jennings job with Hagberg. He also saw the machine on the Manuel property during this period of time since it was on his route to work.
Ledoux purchased the machine primarily for the compressor and other salvagable parts. After the purchase Ledoux dismantled the machine with the use of a cutting torch. He sold the burners, the gantry, the screed, and the scarifying *22 apparatus for scrap. He still has in his possession or control the propane tanks, air compressor, resin tank, motor grader and other parts which he would have also sold but for the filing of this suit.
In July of 1985 Hagberg called Manuel's attorney to make arrangements to pay Manuel so that he could pick up the machine for use on a job in Texas. Hagberg was informed that the machine had been sold. He then instituted this suit for damages alleging that defendants had wrongfully converted his machine." We first address the issue of liability.
In Quealy v. Paine, Webber, Jackson and Curtis, Inc., 475 So.2d 756 (La. 1985), our Supreme Court elucidated upon the action for tortious conversion stating:
"A conversion consists of an act in derogation of the plaintiff's possessory rights, and any wrongful exercise or assumption of authority over another's goods, depriving him of the possession, permanently or for an indefinite time, is a conversion. It is of no importance what subsequent application was made of the converted property, or that defendant derived no benefit from his act. Importsales, Inc. v. Lindeman, 231 La. 663, 92 So.2d 574 (1957).
. . . .
The traditional damages for conversion consist of the return of the property itself, or if the property cannot be returned, the value of the property at the time of the conversion. Boisdore v. International City Bank & Trust Co., 361 So.2d 925 (La.App.4th Cir.), writ denied, 363 So.2d 1384 (La.1978)....
Damages for mental anguish and inconvenience arising from the loss of use of property have been allowed in tortious conversion cases. Alexander v. Qwik Change Car Center, Inc., 352 So.2d 188 (La.1977). Similarly, where property has been wrongfully seized through judicial process, damages for mental anguish and inconvenience due to the loss of use of the property are recoverable. Nassau Realty Co., Inc. v. Brown, 332 So.2d 206 (La.1976); Hernandez v. Harson, 237 La. 389, 111 So.2d 320 (1958)....
Attorney fees are not allowed in Louisiana except where authorized by statute or contract. Hernandez v. Harson, supra (on rehearing). Unless the judgment provides otherwise, costs shall be paid by the party cast. La.Code Civ.P. art. 1920."
It is well settled that issues of fault, intent, negligence, knowledge or ignorance, and/or good faith are not involved in actions for tortious conversion. Lincecum v. Smith, 287 So.2d 625 (La.App. 3rd Cir. 1973), writ refused, 290 So.2d 904 (La. 1974), and authorities cited therein.
The record clearly establishes that, without following the requisites of law, Manuel sold Hagberg's machine to Ledoux, who, after purchasing same, cut up the machine with a welding torch and sold major parts of it for scrap. Defendants' actions unequivocally constituted a tortious conversion by defendants of plaintiff's property.
Defendants concede that they acted as aforeftated but urge that they should not be held liable to plaintiff for damages since plaintiff had abandoned the machine in question.
The trial court refused to consider defendants' "abandonment" argument, finding that it was an affirmative defense and that it had not been specially pleaded. In Webster v. Rushing, 316 So.2d 111 (La. 1975), the Louisiana Supreme Court stated:
"Even before the adoption of the 1960 Code of Civil Procedure, a defendant had to plead special defenses affirmatively in his answer. Presently, it is provided in article 1003 of the Code of Civil Procedure that the answer `shall set forth all affirmative defenses as required by Article 1005.'
Article 1005, in addition to listing certain affirmative defenses which must be specially pleaded, contains the omnibus recital `and any other matter constituting an affirmative defense.' (Emphasis added.) Thus, the listing of the named affirmative defenses in this article are merely illustrative. An affirmative defense raises new matter which, assuming *23 the allegations in the petition to be true, constitutes a defense to the action and will have the effect of defeating plaintiffs demand on its merits...."
Clearly, the plea of "abandonment" fits the definition of an affirmative or special defense and should have been specifically pled by defendants in their answer. We find, as did the trial judge, that defendants' failure to specifically plead "abandonment" as a defense precludes our consideration of the matter.[1]
The remaining questions raised by plaintiff on appeal and by defendants in their answer to Hagberg's appeal concern the issue of damages. It is well settled that a reviewing court must give great weight to the factual conclusions of the trier of fact and that reasonable evaluations of credibility and inferences of fact will not be disturbed, even through the reviewing court may feel its own evaluation or inferences are just as or more reasonable. Till v. Delta School of Commerce, Inc., 487 So.2d 180 (La.App. 3rd Cir.1986). Likewise, as we stated in Attales v. Shelter Mutual Insurance Company, 488 So.2d 474 (La. App. 3rd Cir.1986):
"It is well established that before a court of appeal can disturb an award of damages made by the trial court, the record must clearly reveal that the trier of fact abused its discretion in making the damage award. Coco v. Winston Industries, Inc., 341 So.2d 332 (La.1976); Sikes v. McLean Trucking Co., 383 So. 2d 111 (La.App. 3rd Cir.1980); Browning v. Commercial Union Ins. Co., 476 So. 2d 559 (La.App. 3rd Cir.1985)."
The record in the instant case reveals that plaintiff purchased the machine in question in the year 1980 for the sum of $76,940.00. The basic component of the machine was a 1957 Caterpiller Motor Grader, the parts for which are now in short supply. Hagberg and his experts estimated that building a replacement machine using a 1978 or 1979 grader body would cost in excess of $150,000.00 Paul Barber, a graduate civil engineer and vice-president of Barber Brothers Contracting Company, testifying for the defense stated that, in his experience, the life expectancy of asphalt paving machinery is nine years and that the machine at issue was so outdated that the only value he would place upon it was for its scrap value, which he estimated at $1,200.00. However, Barber also testified that the missing components could be reattached to the motor grader. He estimated that it would cost from $20,000.00 to $25,000.00 to place the machine back as it was before it was dismantled.
After analyzing all evidence on the question of value, the learned trial judge concluded as follows:
"Under the peculiar facts and circumstances of this case the Court cannot accept as the proper measure of damages the cost to construct a replacement machine because to do so would place the plaintiff in a better position after the conversion than before. Moreover, if the Court would use the cost to construct a replacement the Court would be constrained to use a depreciation factor in order to prevent Hagberg from replacing an old machine with a new machine, thereby being in a better position after the conversion than before. The Court cannot accept Hagberg's figure of $169,863.05, nor can the Court accept Barber's figure of $1,200.00, because Warren Gary testified that he would have given up to $3,000.00 for the compressor alone on the machine.
Although Hagberg argues otherwise, the Court feels that the price of $76,940.00 which he paid for the machine in 1980 through the Bankruptcy Court is of some relevance in arriving at a just figure for the machine some five (5) years later in 1985. However, the machine is of value to no one other than Hagberg, and it is only of value to him if he has work for the machine. This is evidenced by the *24 fact that Hagberg himself has four (4) other machines which he has been unable to sell despite attempts to sell them by advertising in national trade journals and the fact that Jackson also has similar machines in Arkansas which he has not been able to sell.
After a careful review and consideration of the evidence presented at trial and the law applicable thereto, the Court concludes that the sum of $25,000.00 will fairly and adequately compensate Hagberg for the damages which he sustained for the loss of his machine. In addition, the Court finds that he is also entitled to the sum of $6,316.00, the cost to ready a substitute machine, and the sum of $2,000.00 for mental anguish and inconvenience due to the loss of the machine, together with legal interest thereon from date of judicial demand, until paid, and for all costs of this suit."[2]
We discern no clear error in the trial court's reasoning or in its ultimate conclusions on the issue of damages. Therefore, we will not disturb the trial court's awards.
Finally, we address appellant's claim that Ledoux and Manuel should have been cast in solido for all damages awarded. Appellant argues that defendants are joint tortfeasors and, as such, should be held solidarily liable to plaintiff for all of his damages. We, however, find this argument without merit. Under La.C.C. art. 2452, as interpreted in Haddad v. Tolbert, 426 So.2d 328 (La.App. 2d Cir.1983), with which we agree, a good faith purchaser of property belonging to someone other than the vendor is not responsible for damages incurred by the true owner of the property over and above the good faith purchaser's obligation to return the property or, if unable to do so, to pay the fair market value thereof.
Therefore, for the reasons stated, the judgment appealed from is affirmed. All costs of this appeal are cast against appellant, J.R. Hagberg.
AFFIRMED.
NOTES
[*] Judge G. William Swift, Jr., Retired, participated in this decision by appointment of the Louisiana Supreme Court as Judge Pro Tempore.
[1] In his written reasons for judgment, the trial judge observed that evidence of neglect by Hagberg of the machine was allowed only in connection with the issue of damages, however, from the evidence adduced, the trial court would not have found an abandonment on the part of Hagberg nor a belief on the part of Manuel that the property had been abandoned.
[2] Evidence supporting the $6,316.00 award, as the cost to ready substiute machine, is uncontradicted.