### In re OCEAN TRANSPORT CORPORATION, Debtor.

### Bankruptcy No. 90–04050.

United States Bankruptcy Court, N.D. Florida, Pensacola Division.

July 10, 1997.

---

George D. Fagan, New Orleans, LA, Marsha W. Montgomery, Pensacola, FL, for Balehi Marine.

J. Lofton Westmoreland, Pensacola, FL, for Debtor.

## MEMORANDUM OF OPINION

LEWIS M. KILLIAN, Jr., Bankruptcy Judge.

THIS CAUSE was heard before the Court on the objection of the debtor, Ocean Transport Corporation ("OTC"), to the proof of claim filed by Balehi Marine, Inc ("Balehi"). OTC objects to the claim on the basis that an accord and satisfaction in full settlement of the indebtedness was reached with Balehi. OTC also claims that even if there was no accord and satisfaction, Balehi retained property of OTC of a value that equals or exceeds its debt to Balehi and thus, no claim should be allowed. Balehi argues that there was no accord and satisfaction and that the value of the property retained is less then OTC's indebtedness to Balehi. The Court having considered testimony and depositions, argument of counsel, and pleadings and related documents submitted in the cause, partially sustains the debtor's objection to Balehi's proof of claim and will allow a claim in the amount of $7,842.41.

## Findings of Fact

Ocean Transport Corporation, the debtor, voluntarily filed for protection under Chapter 11 of the Bankruptcy Code in 1990. Balehi Marine filed a proof of claim alleging that OTC was indebted to Balehi for work and services performed in Louisiana in the principal amount of $20,897.09 and for pre-petition interest of $1,385.32. OTC filed an objection to the claim on the grounds that an accord and satisfaction in full settlement of the indebtedness had been agreed to in which Balehi would keep an OTC Hyster forklift located at the Balehi shipyard for full payment and satisfaction of OTC's indebtedness.

The Hyster forklift, which was purportedly accepted by Balehi in full satisfaction of OTC's indebtedness, was purchased by OTC in 1986 for a price of $49,972.20. In mid 1989, OTC delivered the Hyster forklift to Balehi's shipyard in Louisiana in order to unload rods from barges which had previously been delivered by OTC. At the completion of the job, OTC tried to recover the forklift but was not allowed to by Balehi employees. The OTC employees were told that the forklift would be given to them over somebody's dead body. Mr. Leshe, OTC's president, testified that some time after the incident, he talked to both Mr. Stevens, President of Balehi, and Mr. Levy, Chief Executive Officer of Balehi, regarding the non-release of OTC's forklift. He testified that he told them that Balehi's failure to release the forklift was not right and that if Balehi kept the forklift, it would be in full satisfaction of OTC's indebtedness to Balehi. Neither Mr. Stevens nor Mr. Levy disputed, disagreed or rejected this proposition. Neither did they suggest to Mr. Leshe that OTC could have access to Balehi's shipyard in order to recover the forklift. Mr. Leshe felt that an accord and satisfaction in full settlement of OTC's indebtedness to Balehi had been reached. At approximately the same time that the accord and satisfaction took place, OTC alleges that it had an arms-length purchase offer for the forklift in the amount of $35,000.

From 1990 to 1994, the forklift was left uncovered and exposed to the elements at the Balehi shipyard and no maintenance was performed on it. The forklift was working and used by Balehi in a 1992 clean-up of adjoining property. After ceasing business operations in 1993, Balehi obtained a 1994 appraisal of the forklift valuing it at $10,000. The appraisal stated that if the engine was in operable condition, the value of the forklift may increase by an additional $5000. In 1995, the forklift was sold by Balehi in a liquidation type sale for $4500. Following the sale, the forklift's new owner changed the tires on the forklift, and drove it off of Balehi's premises.

## Conclusions of Law

There are three issues which must be addressed in determining whether Balehi's claim will be allowed. The first is which state laws should apply in determining whether an accord and satisfaction in full settlement of OTC's indebtedness was reached. The second is whether there was an accord and satisfaction reached between the two parties. The last issue is if there was no accord and satisfaction, then what is the value of the forklift in order to set it off against Balehi's claim.

### I. Choice of Law Question

The first question is whether Florida or Louisiana law should apply in determining whether an accord and satisfaction was reached between OTC and Balehi. Both the Florida Supreme Court and the 11th Circuit have adopted the doctrine of *lex loci contractus* in conflicts of law questions regarding contracts. *Goodman v. Olsen*, 305 So.2d 753, 755 (Fla.1974); *Fioretti v. Massachusetts General Life Ins. Co.*, 53 F.3d 1228, 1235 (11th Cir.1995), *cert. denied*, —— U.S. ——, 116 S.Ct. 708, 133 L.Ed.2d 663 (1996). Under the *lex loci contractus* doctrine, a contract is governed by the law of the state in which the contract is made or is to be performed. *Goodman*, 305 So.2d at 755. If a matter arises concerning validity, execution, or interpretation of a contract, the law of the state where the contract was made governs. *New England Machinery v. Conagra Pet Products Co.*, 827 F.Supp. 732, 735 (M.D.Fla.1993). If the matter is in regards to performance of a contract, then the law of the place of performance governs. *Id.* Although the contract between Balehi and OTC

was executed in Florida, the services and work provided for in the contract were performed at Balehi's shipyard in Louisiana. Following the doctrine of *lexi loci contractus,* Louisiana law must be applied in determining whether an accord and satisfaction was reached between OTC and Balehi.

## II.   Accord and Satisfaction

■  OTC claims that an accord and satisfaction was reached with Balehi in 1990. The agreement called for Balehi to retain the Hyster forklift in its possession for full settlement of OTC's indebtedness. This accord and satisfaction was never put in writing nor was the title of the forklift ever sent to Balehi.

Louisiana law requires that a settlement to be either in writing and signed by both parties or recited in court. *Felder v. Georgia Pacific Corporation,* 405 So.2d 521, 523 (La. 1981); *DeSoto v. DeSoto,* 694 So.2d 1043, 1045 (La.App. 5 Cir.1997). Louisiana Civil Code Article 3071 provides:

> A transaction or compromise between two or more persons, who, for preventing or putting an end to a lawsuit, adjust their differences by mutual consent, in the manner which they agree on, and which every one of them prefers to the hope of gaining, balanced by the danger of losing. This contract must be reduced into writing.

Since the purported accord and satisfaction is not in writing, there is no settlement under Louisiana law. With no accord and satisfaction, Balehi has a claim against the debtor.

■  Although Balehi's claim is allowed, the amount of the claim must be reduced by the value of the forklift retained by Balehi. Balehi's exercise of dominion and control over the forklift, when Balehi would not allow OTC to retrieve the forklift from its property, gives rise to a conversion cause of action by OTC. Conversion consists of exercising or assuming authority over another's goods depriving the owner of possession, permanently or for an indefinite time. *Chrysler Credit Corp. v. Whitney Nat'l Bank,* 51 F.3d 553, 557 (5th Cir.1995); *United States v. Hibernia Nat'l Bank v. Rault,* 882 F.2d 961, 964 (5th Cir.1989). The intent required for an act of conversion is not one of wrongdoing, but rather an intent to exercise control over the goods which is inconsistent with the owner's rights. *Hibernia Nat'l Bank,* 882 F.2d at 964. Issues of fault, knowledge, ignorance, good faith or negligence are not at issue in tortious conversion actions. *Hagberg v. Manuel,* 525 So.2d 19, 22 (La.Ct. App.3d 1988). It does not matter whether Balehi derived a benefit from the converted forklift or what subsequent application was made of the forklift. *Id.* A conversion occurred because Balehi knew that the OTC forklift was in its control and that OTC was deprived of using its forklift during the five year period that Balehi was in possession.

Although Balehi attempts to somehow claim that OTC abandoned the forklift, and thus no conversion occurred, it has submitted no evidence to support its claim. The testimony of OTC's president stating that OTC tried to retrieve the forklift from Balehi, that Balehi would not release it and that he finally told Balehi that the forklift would be in full accord and satisfaction of its indebtedness to Balehi is unrebutted. Balehi's exercise of control over OTC's forklift at the beginning of 1990 was a conversion of OTC's property.

## III.   Value of forklift and set-off

■  Having determined that Balehi's actions give rise to a conversion cause of action, damages must be determined. Since the property can not be returned, the damages for conversion is the value of the property at the time of the conversion. *Boisdore v. International City Bank & Trust Co.,* 361 So.2d 925, 930 (La.Ct.App. 4th 1978); *writ denied,* 363 So.2d 1384 (La.1978). Damages for mental anguish and inconvenience arising from the loss of use of property are also allowed. *Quealy v. Paine, Webber, Jackson & Curtis,* 475 So.2d 756, 761 (La.1985).

The damages arising from the conversion are the value of the forklift at the time of Balehi's exercise of control over the forklift. In order to determine the value of the forklift at the time of conversion, I must evaluate the different values submitted into evidence. The forklift was purchased by OTC in 1986 for $49,972.20. OTC allegedly had a purchase offer in 1990 for $35,000. In 1994, an appraisal was performed and the forklift was

valued at $10,000 in an "as is, where is" condition with the possibility that the engine would have to be rebuilt. If the engine was operable, the forklift would be worth an additional $5,000. The final value submitted into evidence was the 1995 sale price of $4500.

OTC alleges that it had at arms-length purchase offer in 1990 for the forklift in the amount of $35,000. Since this offer was made near the time of Balehi's conversion of OTC's forklift, OTC argues that this value should be used in determining the value of the forklift. By valuing the forklift at $35,000, Balehi's claim should not be allowed. Although this arms-length purchase offer could have been useful in my determination of the forklift's value, this purchase offer is unsubstantiated by any evidence that such an offer did exist. Since this figure is not supported by any evidence, except for testimony from OTC's president, this figure will not be considered in determining the value of the forklift.

Balehi argues that the 1995 sale price should be the value of the forklift and its claim should be allowed minus the $4500. I disagree with this value since the sale took place as a liquidation type sale after Balehi ceased operations in 1993. Balehi was basically "just trying to get rid of it". This value also occurred after the forklift had been sitting out in the elements for four years with no maintenance being performed on it.

The value which I am inclined to use in determining the value of the forklift is the 1994 appraisal of $10,000. The appraiser testified that if the engine was in operable condition, the forklift's value would increase by an additional $5000. Since the 1995 purchaser drove the forklift off of Balehi's premises, after only having to change its rotted tires, the forklift's value will be increased by an additional $5,000, for a total value of $15,000. Although the appraisal took place four years after conversion, the expert testified that after ten years from manufacturing, the depreciation for equipment such as this, bottoms out. The value for the forklift in year 10 has basically the same value in year 15. Since the forklift was a 1979 model, the value of it had already bottomed out by the time Balehi converted it in 1990. The $15,-000 value adequately represents the forklift's value at the time of the conversion.

The value of the forklift in 1990 is $15,000. Since damages in a conversion cause of action is the value of the property at the time of the conversion, OTC has been damaged in the amount of $15,000. Under 11 U.S.C. § 553(a) (1996), this figure will be set-off against Balehi's claim of $22,842.41.

In summary, having determined that there is no accord and satisfaction under Louisiana law, that Balehi's exercise of control over OTC's forklift gives rise to a conversion cause of action, and that the damages of the conversion is the 1994 appraisal value of the forklift, OTC is entitled under § 553 to a $15,000 set-off against Balehi's claim. The debtor's objection to Balehi's proof of claim is in part sustained and Balehi's claim will be allowed in the amount of $7842.41. A separate order will be entered in accordance herewith.