# STATE OF LOUISIANA

# COURT OF APPEAL, THIRD CIRCUIT

# 18-333

SHANTANYA THIBEAUX

VERSUS

GOAUTO INSURANCE COMPANY

**\*\*\*\*\*\*\*\*\*\*\*\***

## APPEAL FROM THE
## FIFTEENTH JUDICIAL DISTRICT COURT
## PARISH OF LAFAYETTE, NO. 2017-2737
## HONORABLE DAVID M. SMITH, DISTRICT JUDGE

**\*\*\*\*\*\*\*\*\*\*\*\***

## JOHN E. CONERY
## JUDGE

**\*\*\*\*\*\*\*\*\*\*\*\***

Court composed of Sylvia R. Cooks, Elizabeth A. Pickett, John E. Conery, D. Kent Savoie, and Candyce G. Perret, Judges.

**Cooks, J., dissents and assigns reasons.**

**REVERSED AND REMANDED.**

Jason W. Burge
Fishman Haygood LLP
201 St. Charles Avenue, 46th Floor
New Orleans, Louisiana 70170-4600
(504) 586-5252
Attorney for Appellant/Defendant
    GoAuto Insurance Company

W. Alan Lilley
Goforth & Lilley, PLC
109 Stewart Street
Lafayette, Louisiana 70501
(337) 237-5777
Attorney for Appellee/Plaintiff
    Shantanya Thibeaux

**CONERY, Judge.**

The defendant, GoAuto Insurance Company (GoAuto), appeals the trial court's partial summary judgment in favor of its insured, Shantanya Thibeaux (Mrs. Thibeaux), in which the trial court found that GoAuto was liable under its policy's collision coverage for damages to Mrs. Thibeaux's 2008 Ford Mustang (Mustang). The vehicle at issue was involved in a one car accident while being driven by Jairi Thibeaux, an excluded driver under the terms of  policy number 88797-20 issued to Mrs. Thibeaux by GoAuto.  For the following reasons, we reverse the judgment of the trial court and remand for further proceedings.

### FACTS AND PROCEDURAL HISTORY

On May 11, 2016, while Ms. Thibeaux was not at home, Jairi Thibeaux, her seventeen-year-old son, took her Mustang without permission and was in a single vehicle collision a few hundred yards from their home causing extensive damage to the vehicle.  The accident did not involve third party fault. The GoAuto Policy denied coverage for the accident based on the "Named Driver Exclusion Endorsement" which specifically excluded Jairi as a driver of the Mustang under the terms of the policy.

When GoAuto denied Mrs. Thibeaux's claim for damages to the Mustang, she filed suit and moved for partial summary judgment on the issue of collision coverage.  The deposition testimony of Mrs. Thibeaux and Jairi Thibeaux, as well as Mrs. Thibeaux's affidavit filed in support of the motion for partial summary judgment, are clear that Jairi did not have permission to drive his mother's Mustang on the day of the accident or any other day.

The trial court, "after considering the law, memoranda and argument of counsel and the insurance policy, affidavits and deposition testimony[,]" found as

follows in its December 29, 2017 judgment:

> **IT IS ORDERED, ADJUDGED AND DECREED** that Summary Judgment is granted in favor of Shantanya Thibeaux, the Court finding that there is no genuine issue of material fact that Jairi Thibeaux did not have permission to operate the 2008 Mustang owned by Shantanya Thibeaux on the day of the collision, May 11, 2016, and there is property damage collision coverage afforded to Shantanya Thibeaux for the 2008 Mustang arising out of the collision of May 11, 2016[,] under the GoAuto Policy of Insurance policy no. 88797-20.

GoAuto now timely appeals the trial court's December 29, 2017 judgment on the basis that the insurance policy at issue excludes collision coverage when the vehicle is being operated by Jairi Thibeaux, a named excluded driver.

## ASSIGNMENT OF ERROR

GoAuto appeals the trial court's ruling asserting one assignment of error as follows: "The district court's granting of summary judgment on coverage in favor of Ms. Thibeaux was contrary to the terms of the Named Driver Exclusion Endorsement, was contrary to Louisiana statutes providing that such exclusion is enforceable, and was error."

## LAW AND DISCUSSION

### *Standard of Review*

An appellate court reviews a trial court's granting of a motion for summary judgment *de novo*. *Duncan v. U.S.A.A. Ins. Co.*, 06-363 (La. 11/29/06), 950 So.2d 544. This standard of review requires the appellate court to use the same criteria as the trial court in determining if summary judgment is appropriate, which is whether there is a genuine issue of material fact and whether the mover is entitled to judgment as a matter of law. *Id.*

A *de novo* review simply asks whether the trial court was legally correct or legally incorrect. *Domingue v. Bodin,* 08-62 (La.App. 3 Cir. 11/5/08), 996 So.2d

654. "[T]he appellate court assigns no special weight to the trial court[.]" *Id.* at 657. Instead, the appellate court reviews the record in its entirety and determines "whether the trial court's decision was legally correct in light of the evidence." *Id.*

*Assignment of Error One - Exclusion of Coverage And Statutory Construction*

GoAuto argues that the trial court erred by not applying the terms of the GoAuto policy issued to Mrs. Thibeaux, more particularly the "**Named Driver Exclusion Endorsement**" "Policy Number: 88797-16, which states:

> **PLEASE READ THIS ENDORSEMENT CAREFULLY.**
> **THIS ENDORSEMENT CHANGES THE TERMS OF YOUR POLICY.**
>
> This endorsement is attached to and, forms a part of the policy to be issued as of the date this endorsement is prepared. This endorsement will apply to this policy and any amended, renewal, reinstatement or substitute policy issued to the same **Named Insured** by the Company. This endorsement supersedes and excludes from the policy any contrary provision(s).
>
> In consideration of the premium charged, the **Named Insured** agrees that no coverage provided by the Company is afforded while any vehicle listed on this policy is being used, driven, operated or manipulated by, or under the care of :
>
> Robyn Thibeaux, Jairi D. Thibeaux.

(Emphasis in original).

It is undisputed that Mrs. Thibeaux signed the Named Driver Exclusion Endorsement on April 12, 2014, and the endorsement was in effect on May 11, 2016, the date of the accident at issue.

Likewise, the "Named excluded operator" is also clearly and specifically defined in the GoAuto policy as:

> "**Named excluded operator**" means any **person** who by written agreement, contained in the application or by endorsement to this Policy, signed by any applicant for this Policy, or the applicant's legal representative, is listed as a **person** who shall be excluded from

coverage under this Policy, whether or not that listed excluded **person** is **you**, the **named insured**, the spouse of the **named insured**, a **family member** of the **named insured**, or any other **person** who but for being named as an excluded operator would have been a **person** insured under the terms of this Policy or by operation of law.

(Emphasis in original).

Further, the portion of the policy entitled, "**Exclusions for Parts D, E, F, AND G[,]**" the "named excluded operator" provision in Section 1 also provides:

There is no Coverage For Damage To **Your** Auto for:

1.      Arising out of the operation or use of any **auto** insured under Parts D, E,[Collision Coverage] F, and/or G by a **named excluded operator**.

(Emphasis in original).

Louisiana Revised Statutes 32:900(L)(1) expressly permits named driver exclusions and states in pertinent part:

Notwithstanding the provisions of Paragraph (B)(2) of this Section, an insurer and an insured may by written agreement exclude from coverage the named insured and the spouse of the named insured. The insurer and an insured may also exclude from coverage **any other named person who is a resident of the same household as the named insured at the time that the written agreement is entered into,** and the exclusion shall be effective, regardless of whether the excluded person continues to remain a resident of the same household subsequent to the execution of the written agreement. It shall not be necessary for the person being excluded from coverage to execute or be a party to the written agreement. For the purposes of this Subsection, the term "named insured" means the applicant for the policy of insurance issued by the insurer.

(Emphasis added).

The sole purpose for the exclusion in La. R.S. 32:900(L) is **premium reduction.** *Williams v. Watson*, 01-0495, p.7 (La.10/16/01), 798 So. 2d 55, 59. As we recognized in *Joseph v. Dickerson*, 99-1046, p.9 (La.1/19/00), 754 So.2d 912, 917, the purpose of the exclusion "is to allow the named insured the option of paying a reduced premium in exchange for insurance that affords **no coverage while a covered vehicle is operated by the excluded driver."**

4

*Bryant v. United Servs. Auto. Ass'n*, 03-3491, p. 8 (La. 9/9/04), 881 So.2d 1214, 1219 (emphasis added).

Jairi was excluded from collision coverage in exchange for a reduced policy premium, all in accordance with the stated purpose of the statute. The collision at issue did not involve any third parties and there is nothing in the policy language that allows collision coverage in a single vehicle accident if the excluded driver is operating the vehicle without permission.

Mrs. Thibeaux urges the application of *Khaliq v. Progressive Security Ins. Co.*, 06-1207 (La.App. 3 Cir. 2/7/07), 950 So.2d 933, *writ denied*, 07-471 (La. 4/27/07), 955 So.2d 688. In *Khaliq*, a panel of this court found that collision coverage was available because no permission was given to the excluded driver to operate the vehicle at issue. However, the panel in *Khaliq* was also guided by the supreme court's holding and rational in *Bryant. See id.*

However, *Bryant*, 881 So.2d 1214, did not involve a first party collision claim by the policy holder against its insurer for collision coverage and therefore is inapplicable to the instant case. Because *Khaliq* relied on *Bryant*, it is distinguishable from this case. *Bryant* involved *compulsory* liability coverage under La.R.S. 32:900(L), cited above. In *Bryant*, the plaintiff vehicle owner sought coverage under the tortfeasor's liability policy; however, the driver of the plaintiff's vehicle at the time of the accident was an excluded driver under the policy. As stated by the court:

> the **narrow issue** presented by these cases is whether the "no pay, no play" law applies to bar a portion of a named insured's recovery of her own bodily injury and/or property damages when an excluded driver is involved in an accident while driving the named insured's vehicle. The resolution of this issue requires a determination of the scope of La.R.S. 32:866 and a balancing of the competing policies underlying La.R.S. 32:866 and La.R.S. 32:900(L).

5

*Id*. at 1220 (emphasis added).

Because the applicability of the "no pay, no play" statute depended upon whether the plaintiff vehicle owner carried the requisite compulsory liability coverage required by La.R.S. 32:900, the supreme court in *Bryant* first considered whether the vehicle owner "owned or maintained" the requisite liability insurance. It concluded that the *Bryant* policy did not provide the requisite liability coverage, stating:

> Had [the excluded driver] been at fault in causing the accident, [the vehicle owner's] insurance coverage would not have been available to an injured third party. **Likewise, any property damage claim that [the vehicle owner] would have otherwise been able to make against her own coverage would not have been available had [the excluded driver] been at fault in causing an accident while driving her vehicle. Because no insurance coverage was afforded by [the vehicle owner's] policy for any claim arising out of accidents that occurred when [the excluded driver] was driving [the owner's] vehicle,** we must conclude that she failed to maintain compulsory motor vehicle liability security at the time of the accident at issue.

*Id*. at 1222 (emphasis added).

The supreme court specifically considered the issue of "permission" in connection with La.R.S. 32:866, the "no pay, no play" statute, and La.R.S. 32:900, which requires *liability* coverage but also allows a vehicle owner to exclude certain individuals as insureds under the liability policy. *Id*. It found the two statutes were:

> best reconciled by limiting the application of La. R.S. 32:866 [the "no pay, no play" statute] to situations in which **a named insured has given permission to operate a covered vehicle to a driver validly excluded pursuant to La.R.S. 32:90[0](L)**, and then seeks to recover his or her own damages when the excluded driver is involved in an accident.

*Id.* at 1223 (emphasis added).

In *Bryant*, 881 So.2d 1214, the issue of permission did not affect the determination of whether *coverage* was afforded under the vehicle owner's own

6

policy. In fact, the supreme court recognized that no liability or collision coverage was available when an excluded driver drove the vehicle. Rather, the court considered the issue of permission only in connection with determining whether the "no play, no pay" statute barred the vehicle owner from recovering *from the tortfeasor's liability insurer*. *Id.*

In this case there is no third party fault at issue for the collision claim damage to the Mustang, and the applicability of "no play, no pay" is not at issue in this case. The language of the GoAuto policy clearly provides there is no insurance coverage of any kind, which would include collision coverage, provided to a vehicle which is being driven by a named excluded driver such as Jairi Thibeaux. Under the provisions of La.R.S. 32:900(L), an individual and its insurer are free to contract for no coverage for certain named excluded drivers in exchange for a reduced premium. *Williams*, 798 So.2d 55.

We note that a panel of our sister circuit in *Taylor v. Gramercy Ins. Co.*, 12-795 (La.App. 1 Cir. 2/13/13) (unpublished opinion) reached the same result. In *Taylor*, the owner of a 2006 Cadillac CTS (Cadillac), Cynthia Taylor, executed a named driver exclusion endorsement with her insurer, Gramercy Insurance Company (GIC), in which her daughter, Charrion Taylor, was named as an excluded driver for the Cadillac. Charrion was driving the Cadillac in Ethel, Louisiana, "when she lost control of the vehicle and hit a culvert." *Id.* at p. 1. The Cadillac was a total loss. *Id.*

Both parties filed motions for summary judgment and the trial court granted the motion filed by GIC. The first circuit affirmed, distinguishing *Bryant* on the basis that the supreme court had "specifically noted that had Ms. Bryant's excluded driver been at fault in causing the accident, any property damage claim that Ms.

Bryant would have been otherwise able to make against her own coverage would not have been available to her. *Bryant*, 881 So.2d at 1222." *Taylor*, 12-795 at p. 6. The panel also found that the *Khaliq* case was factually distinguishable from *Taylor*. *See id.* The appellate court affirmed the trial court's ruling granting summary judgment in favor of GIC, and denying summary judgment in favor of the Taylors, finding there was no coverage for the damages to the Cadillac under the GIC policy for the named excluded driver, Charrion Taylor. *See id.*

We find that the named driver exclusion in this case is clear and unambiguous. Accordingly, we reverse the partial summary judgment of the trial court in favor of Shantanya Thibeaux and remand this matter for further proceedings.

## **CONCLUSION**

Based on the foregoing, we reverse the trial court's December 29, 2017 partial summary judgment in favor Shantanya Thibeaux and remand this matter for further proceedings. All costs of this proceeding are assessed to Shantanya Thibeaux.

**REVERSED AND REMANDED.**

STATE OF LOUISIANA

COURT OF APPEAL, THIRD CIRCUIT

18-333

SHANTANYA THIBEAUX

VERSUS

GOAUTO INSURANCE COMPANY

**COOKS, J., dissents.**

Shantanya Thibeaux (Mrs. Thibeaux) was the owner of a 2008 Ford Mustang. On May 11, 2016, while Mrs. Thibeaux was at work, her young son, Jairi Thibeaux (Jairi), took the car without permission and headed down the road to school. Mrs. Thibeaux and Jairi testified Jairi knew he was forbidden to drive the car. Both testified his mom did not know Jairi took the car without her permission on the morning of the accident. Jairi testified the accident occurred when he was forced onto the shoulder of the road by an oncoming vehicle veering into his lane of travel. Despite this uncontradicted testimony the majority says this was a one-car accident and concludes "there is no third-party fault at issue." This is not supported by the record.

Following the accident Mrs. Thibeaux filed a claim with GoAuto for payment in accordance with the insurance policy's provision covering damage or loss resulting from a collision. GoAuto denied coverage and refused to pay any amount to Mrs. Thibeaux for the loss of her vehicle because it construed the provision listing Jairi as an excluded driver to be an all-inclusive proviso. Mrs. Thibeaux sued GoAuto and moved for partial summary judgment on the issue of liability for the loss of the vehicle. The trial court granted partial summary judgment in favor of Mrs. Thibeaux.

Upon *de novo* review the majority finds GoAuto has no liability to Mrs. Thibeaux for the loss of the Mustang because Jairi was an excluded driver at the time of the accident. It finds the excluded driver provision in this insurance contract is an all-inclusive provision which renders irrelevant any consideration of whether Jairi had implied or express permission or was driving without permission at the time of the accident. But the Louisiana Supreme Court in *Bryant v. United Servs. Auto. Ass'n., 03-3491* (La. 9/9/04), 881 So.2d 1214, consolidated with *McCray v. Jenkins*, 04-28, (La. 9/9/04), 881 So.2d 1214, and this court in *Khaliq v. Progressive Security Insurance Company*, 06-1207 (La.App. 3 Cir. 2/7/07), 950 So.2d 933, *writ denied*, 07-471 (La. 4/27/07), 955 So. 2d 688, rejected such an all-inclusive argument finding there are instances, such as the tort of conversion or theft, which are exceptions. *Bryant* and *Khaliq* are instructive and controlling, but the majority ignores those decisions by "distinguishing" the holdings in *Bryant* and *Khaliq* from the case before us. I believe the majority errs in ignoring the clear rationale of *Bryant* and this court's holding in *Khaliq*. This decision effectively overrules *Khaliq* without expressly saying so.

In *Bryant*, the supreme court resolved conflicting circuit court decisions regarding the applicability of Louisiana's "no pay no play" auto insurance statute, La. R.S. 32:866, which places limitations on recovery for personal injury and property damage. In the *McCray* case the *insured parent gave the excluded driver permission to drive the family vehicle* thus the court found the provisions of the statute applicable. However, in the *Bryant* case the record on summary judgment was "unclear [as to] whether Justin Bryant was operating Marolyn Bryant's vehicle with her permission." *Id*. at 1222. Marolyn Bryant's policy contained a designated driver exclusion endorsement which stated:

> "In consideration of the premium charged for the policy to which this endorsement applies, it is hereby understood and agreed that any insurance afforded by this policy shall not apply or accrue with respect

2

to any claim arising from accidents which occur when any vehicle described in the declarations of the policy or any other vehicle to which the terms of the policy are extended is being used or operated, either with or without permission, by the following excluded members of the insured's household: *Justin Bryant son.*"

*Bryant*, 881 So. 2d at 1222.

The supreme court expressly stated that it therefore had to "determine whether the granting of permission, or lack thereof, by a named insured to an excluded driver to operate a covered vehicle makes a difference in the applicability of La.R.S. 32: 866 to a particular case." *Id.* **The high court found that it did make a difference despite the all-inclusive language denying coverage for use by a named excluded driver.** In *Khaliq* we found the court's reasoning in *Bryant* provided clear guidance in determining the effect on coverage *when an excluded driver operates the insured auto without permission*. The *Bryant* court reasoned as follows:

> It would serve no valid purpose, however, to apply the provisions of the "no pay, no play" law to a situation *in which the excluded driver operated the vehicle **without the permission of the named insured***. In such a situation, *the named insured has not thwarted the law by receiving a reduced premium in exchange for excluding a driver and then permitting that excluded driver to operate the vehicle in contravention of the Motor Vehicle Safety Responsibility Law. Additionally, **it would be absurd** to contend that a named insured should not be allowed to recover a portion of his or her damages pursuant to the provisions of La. R.S. 32:866 in a situation where the vehicle was stolen and then involved in an accident, perhaps an accident that was not caused by the fault of the thief.* This view is supported by the provisions of La. R.S. 32:865, which impose criminal sanctions on an owner *who allows* the operation of a motor vehicle that is not covered by proper security. **<u>The terms of the statute, however, do not apply</u>** *<u>when the vehicle is operated without the permission of the owner</u>*. Additionally, the legislative committee that considered the enactment of the bill that eventually added La. R.S. 32:900(L) specifically declined to amend La. R.S. 32:900(B)(2) to limit required coverage to validly licensed drivers because it was concerned about the situation in which a young child accidentally caused a vehicle to move and cause damage. *See* Minutes of Meeting, House Insurance Committee, May 13, 1992. In light of the policies served by La. R.S. 32:866, *we find it would be absurd to apply the "no pay, no play" law to partially reduce an owner's recovery for damages arising out of the operation of his or her vehicle by an excluded driver who is involved in an accident when the owner did not give the excluded driver permission to operate the vehicle.*

3

*Bryant*, 881 So. 2d at 1223–24 (emphasis added).

The supreme court's decision in *Bryant* recognized the important public policy provided in La.R.S. 32:861-66. Louisiana Revised Statute 32:865 provides criminal penalties for failure to carry compulsory liability insurance required under La.R.S. 32:861. Louisiana Revised Statute 32:866 places limitations on the amount a person may recover for personal injury and/or property damages when they have failed to comply with the compulsory liability insurance law. This statute did not include any language regarding authorized versus unauthorized users, whereas, La.R.S. 32:865(A)3(b) expressly provides that the statutory criminal penalties do not apply: "To the owner of a motor vehicle if at the time of the accident the vehicle was being operated without his permission, express or implied, or was parked by a person who had been operating such motor vehicle without such permission." It was therefore necessary for the supreme court to decide the issue in *Bryant* regarding the applicability of the "no pay, no play" civil penalties to an unauthorized user. The reasoning in *Bryant* and *Khaliq* making the civil penalties provided in La.R.S. 32:866 *inapplicable to unauthorized users*, **even where that user is a named excluded driver**, is consistent with the statutory scheme in La.R.S. 32:865 which expressly does not hold an owner culpable under the criminal statute for failure to carry compulsory liability insurance when the driver is *an unauthorized* user.

The import of the supreme court's decision in *Bryant* was clear to this court in *Khaliq* and I believe the majority errs in ignoring this court's previous decision. Mr. Khaliq's son, like Jairi, was an excluded driver. Khaliq's son, like Jairi, took the vehicle without his parent's permission or knowledge. This, we said, was "no different from a thief taking and wrecking the vehicle." *Khaliq*, 950 So.2d at 936. We further noted "it has long been recognized that an insured may recover for property damage under the collision coverage when the damage is sustained *while the insured vehicle is in the possession of an **unauthorized** person*." *Id*. at 936-37

4

(citation omitted) (emphasis added). The majority finds that the decision in *Bryant* is "distinguishable" and was limited to the "no pay, no play" situation. But a panel of this court rejected that assertion in *Khaliq* and it should be rejected here. As this court's panel said in *Khaliq*, it is a "distinction[] without a difference." *Id*. at 936. The distinction here, without a real difference, is that the unauthorized person, Jairi, was not a thief. He was engaged in the tort of conversion, and *a loss occasioned by conversion is covered under GoAuto's policy except when the person is a permissive user*. The policy expressly excludes a permissive driver but does not include an exception for a named excluded driver.

The insurance contract is the law between the parties. The majority recognizes this, GoAuto asserts it is so, but, more importantly, La.R.S. 32:900(F)4 expressly provides: "The policy, the written application therefor, if any, and any rider or endorsement which does not conflict with the provisions of the Chapter *shall constitute the entire contract between the parties*" (emphasis added).

The insurance policy provides in pertinent part (emphasis in original and added):

### NAMED DRIVER EXCLUSION ENDORSEMENT

In consideration of the premium charged, the Named insured agrees that no coverage provided by the Company is afforded while any vehicle listed on this policy is being used, driven, operated or manipulated by, or under the care of: Robyn Thibeaux or Jairi Thibeaux.

**POLICY**

Words and phrases that appear in bold have special meaning: refer to terms specifically defined in the DEFINITIONS sections of the Policy…

"**Your insured auto**" means:

a. Any **auto** owned by **you** listed on the declaration page. . .

An "**auto accident**" is an unexpected and unintended event or occurrence arising out of the ownership, maintenance, operation or use

5

of **your insured auto** or a **non-owned auto** that causes **bodily injury** or **property damage**.

"**Loss**" means direct, sudden and a**ccidental** loss of or damage to **your insured vehicle**…

"**Named excluded operator**" means any **person** who by written agreement, contained in the application or by endorsement to this Policy, signed by any applicant for this Policy, or the applicant's legal representative, is listed as a **person** who shall be excluded from coverage under this Policy, whether or not that listed excluded **person** is **you**, the **named insured**, the spouse of the **named insured**, a **family member** of the **named insured**, or any other **person** who but for being named as an excluded operator would have been a **person** insured under the terms of this Policy or by operation of law.

### COVERAGE FOR DAMAGE TO YOUR AUTO

### PART D - COMPREHENSIVE LOSS COVERAGE

### PART E – COLLISSION COVERAGE

As used in Parts D and E, of this Policy, subject to any applicable provision or exclusion in this Policy or endorsement to this Policy:

"**Collision**" means:

1. **your insured auto's or temporary substitute vehicle's** coming into direct physical contact with another object which is not otherwise excluded herein; or

2. **your insured auto's or temporary substitute vehicle's** upset or overturning.

**Exclusions for Parts, D, E, F and G**

There is no coverage For Damage To Your Auto for:

1. Arising out of the operation or use of any **auto** insured under Parts D, E, F, and/or G by a **named excluded operator**…

11. **Loss** occurring while any **auto** insured under Parts D, E, F, and/or G is used in the commission of any **crime** by any **person** to whom **you** granted express or implied permission to operate the **auto**.

15. **Loss caused by the theft or <u>conversion</u> of any auto insured under Parts D, E, F, and/or G *<u>by a person to whom you have voluntarily entrusted your insured auto</u>*. This exclusion does not apply when the auto is stolen from the person to whom you have loaned it…**

**Limits of Liability for Parts D, E and F**

6

> **Our** limit of liability for **loss** covered under this Part shall not exceed the lesser of:
>
> 1.  The actual cash value of the stolen or damaged property at the time of **loss**; reduced by the applicable deductible; or
>
> 2.  The amount necessary to repair or replace the property with other of the like, kind and quality less depreciation, reduced by the applicable deductible.

Under the express terms of the GoAuto policy set forth above, Mrs. Thibeaux is not covered for the loss of her vehicle as the result of a collision when the "loss [is] caused by the theft or *conversion* of any auto insured [under the policy] by a person to whom [she] [] *voluntarily entrusted* [her] insured auto" (emphasis added). This provision in the insurance contract means that Mrs. Thibeaux *is* **covered for loss by conversion (or theft) when she has *not* given permission to such an individual**. This is precisely the circumstance we have here and nothing distinguishes it from the same circumstance we decided in *Khaliq*.

The trial court found that on the day of the accident Jairi took the car without Mrs. Thibeaux's permission and he knew he was forbidden from driving the car. Nothing in the record suggests any reason to upset the factual findings of the trial court. Interpreting this policy language to provide coverage for *conversion* by an *unauthorized* named excluded driver *is consistent* with other policy provisions that exclude coverage when the owner authorizes a named excluded driver to use the vehicle. Under any of the policy provisions regarding coverage for loss of the vehicle there is no coverage when the loss is caused either by theft, conversion, for criminal purposes, or by a named excluded driver, when such is done with the owner's permission or authorization. Likewise, the policy consistently provides coverage in a variety of circumstances *when damage or loss results from the actions of an unauthorized user.*

7

To understand the application of the applicable language in the policy to Jairi's actions it is necessary to examine the jurisprudence concerning the tort of conversion as that term is used in the legal context.

> **The tort of conversion is an intentional act done in derogation of the plaintiff's possessory rights. It is committed when one wrongfully does any act of dominion over the property of another in denial of or inconsistent with the owner's rights. Any wrongful exercise or assumption of authority over another's goods, depriving him of the possession, permanently or for an indefinite time, is a conversion. . .** *Kinchen v. Louie Dabdoub Sell Cars, Inc.,* 05–218 (La.App. 5 Cir. 10/6/05), 912 So.2d 715, 718 (emphasis added) (citations omitted), *writ denied,* 05–2356 (La.3/17/06), 925 So.2d 544.

*Louisiana Health Care Grp., Inc. v. Allegiance Health Mgmt., Inc.*, 09-1093 p. 7 (La.App. 3 Cir. 3/10/10), 32 So.3d 1138, 1143 (emphasis added).

**There can be no question that Jairi's taking of the car without Mrs. Thibeaux's knowledge or permission was a tortious conversion of her property**. The insurance policy clearly includes coverage for such conversion of Mrs. Thibeaux's property by an *unauthorized user*. The *only caveat to this coverage* provided in the policy is that this coverage is forfeited if the person who commits the tortious conversion was a *permissive* user. This provision in the policy *does not include* any language in the policy *excluding coverage* for conversion by a named excluded driver acting *without permission*. It would have been easy to include such a provision, but the contract is silent.

The provisions in this insurance contract are consistent with Louisiana law on conversion. "Issues of fault, intent, negligence, knowledge or ignorance, and/or good faith are not involved in actions for tortious conversion." *Labbe v. Premier Bank*, 618 So.2d 45, 46 (La. Ct. App. 1993) citing *Hagberg v. Manuel,* 525 So.2d 19 (La.App. 3 Cir.1988). Thus, in the case of the unauthorized user's tortious conversion of the insured's property there is no need to explore any "issue of fault, intent, negligence, knowledge, ignorance and/or good faith." *Id. The only dispositive*

8

*fact is the determination that Jairi was an unauthorized user who damaged the car while possessing it through tortious conversion.* Questions of whether his mom should have employed more heroic efforts to foreclose the possibility of his tortious conversion or whether she was negligent in failing to foreclose all possibility of Jairi taking the car against her instruction cannot form a basis in determining her right to recover for the loss of her property due to tortious conversion. *This loss by conversion is exactly one of the types of coverage for which Mrs. Thibeaux paid her premiums.* Thus, GoAuto's argument that requiring it to pay for the loss of the car under these circumstances gives Mrs. Thibeaux the benefit of something she did not pay for is simply not true. Because this insurer provided coverage for damages occasioned by unauthorized users in several circumstances, they have undoubtedly considered such loss in the calculation of premiums. Thus, it seems disingenuous for GoAuto to assert that if it is made to pay for Mrs. Thibeaux's car, she would be getting such coverage free. The majority implicitly accepts this argument stating: "Under the provisions of La.R.S. 32:900(L), an individual and its insurer are free to contract for no coverage for certain named excluded drivers in exchange for a reduced premium." **The supreme court expressly rejected this notion in *Bryant*.**

The policy provisions for determining the amount of the insured's recovery for loss by conversion is also consistent with the jurisprudential determination of damages for conversion: "The measure of damages for tortious conversion, when the property cannot be returned to the plaintiff[], is the value of the property at the time of conversion. *See Dual Drilling* [*Co. v. Mills Equipment Investments, Inc., [98-343 (La. 12/1/98),*] 721 So.2d [853] at 857–858; *Matherne v. Terrebonne Parish Police Jury,* 462 So.2d 274, 279 (La.App. 1st Cir.1984), *writs denied,* 463 So.2d 1321 (La.1985). *See also, Gurst v. City of Natchitoches,* 428 So.2d 502, 504–505 (La.App. 3d Cir.1983)." *Commercial Flooring & Mini Blinds, Inc. v. Edenfield*, 13-0523 p. 13 (La.App. 1 Cir. 2/14/14), 138 So. 3d 30, 39. This is precisely the

recompense provided for in this insurance policy, and it is exactly the measure of damages Mrs. Thibeaux seeks, and to which she is entitled, less the "applicable deductible" or "depreciation" as provided in the policy.

Likewise, had the damage to Mrs. Thibeaux's vehicle been caused by a thief the policy provides coverage for loss occasioned by such an unauthorized user. Not only does the policy provide such coverage, we made it clear in our holding in *Khaliq*, 955 So. 2d 688, that loss caused by a thief is covered. Our decision in *Khaliq* was guided by the Louisiana State Supreme Court's holding and rationale in *Bryant*, 881 So.2d 1214 and both are applicable here. The majority errs in finding otherwise.

Subsequent to *Khaliq*, a panel of this court was again confronted with the question of coverage when a named excluded driver was driving a car at the time of an accident. *In Martin v. Safeway Insurance Co. of La.*, 08-1419 (La.App. 3 Cir. 11/5/09), 26 So.3d 777, another panel of this court rejected the claim for coverage from the "tortfeasor, a named excluded driver, seek[ing] protection from personal liability by seeking to become an insured, under a Safeway policy which specifically excluded him from coverage." There is no indication in that opinion as to whether the excluded driver was driving the vehicle with or without permission. That panel reasoned that "to allow plaintiff to recover from the defendant, Safeway, in this case would make the terms of La.R.S. 32:900(L) meaningless." *Id*. at 780. That statute deals with motor vehicle liability coverage and provides in pertinent part:

> Notwithstanding the provisions of Paragraph (B)(2) of this Section, an insurer and an insured may by written agreement exclude from coverage the named insured and the spouse of the named insured. The insurer and an insured may also exclude from coverage any other named person who is a resident of the same household as the named insured at the time that the written agreement is entered into, and the exclusion shall be effective, regardless of whether the excluded person continues to remain a resident of the same household subsequent to the execution of the written agreement. . .

La.R.S. 32:900(L)1.

10

The panel in *Martin* said it "did not disagree with the outcome in *Khaliq*" *Supra.* at 779, but found it was not applicable to that case. It also discussed the *Bryant* decision but likewise found it inapplicable. The decision in *Martin* is not inconsistent with *Bryant* and *Khaliq* nor with my position here.

The insurance contract here provides coverage for the *damages caused by the tortious conversion* of Mrs. Thibeaux's property by an unauthorized user who was a named excluded driver. Mrs. Thibeaux is entitled to coverage for the loss of her Mustang as provided in the GoAuto insurance policy. For the reasons stated I believe there was no error in the trial court's ruling.

Furthermore, we must certainly all be aware that in today's world many households have any number of licensed drivers residing with their parent and/or grandparents. One can easily imagine a household of three, four and five individuals residing with their parent or grandparent and the extremely burdensome dilemma the majority decision will impose on many people. To interpret the insurance contract at issue and the cited jurisprudence as the majority has will mean that no one can take the risk that will now be included in failing to insure all persons of driving age living in the owner's residence at the time the policy is issued. The cost would be prohibitive for many. Because the decision of this panel is at odds with a decision by a previous panel of this court and with the prior holdings of the Louisiana Supreme Court, I believe this case merits an *en banc* hearing. I respectfully dissent.